## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **CADE SELJAK, JACOB BERNARDI,** and **NANCY TAYLOR on behalf of a class of all others similarly situated,** | Case No. |
| **PLAINTIFFS,** | **JURY TRIAL DEMANDED** |
| **- v. -** | |
| **PERVINE FOODS, LLC,** | |
| **DEFENDANT.** | |

## CLASS ACTION COMPLAINT

Plaintiffs Cade Seljak, Jacob Bernardi, and Nancy Taylor, individually and on behalf of all others similarly situated, by and through their undersigned counsel, bring the following Class Action Complaint against Defendant Pervine Foods, LLC ("Defendant"):

## NATURE OF THE ACTION

1.      This is a civil class action brought individually by Plaintiffs on behalf of consumers who purchased Defendant's FITCRUNCH Whey Protein Baked Bar products, including but not limited to the following flavors: Chocolate Peanut Butter, Milk & Cookies, Apple Pie, Peanut Butter & Jelly, Chocolate Chip Cookie Dough, Mint Chocolate Chip, Lemon Cake, Peanut Butter, Caramel Peanut, or any other limited, discontinued, or seasonal flavors, and Defendant's FITBAR energy bar products, including but not limited to, the following flavors: Peanut Butter Chocolate, Cranberry Vanilla Almond, or any other limited, discontinued, or seasonal flavors (the "Products").

2.      Defendant misleads consumers into thinking that its Products are "healthy," based on the synonymous name of the Products as "FIT" Crunch, when in fact the Products contain between 8 and 18 grams of fat, depending on flavor and size of the Products.

3.      As purveyors in the highly lucrative protein bar market, Defendant knows that when it comes to labeling and marketing, words matter. This is why Defendant chose to name the Products "FIT" crunch, and to emblazon the word "FIT" on the front and center of each Product label, in a bold all-capitalized font, where it cannot be missed by consumers:



4.      Defendant chose to label the Products in this way to impact consumer choices and gain market dominance, as it is well aware that all consumers who purchased the Products were exposed to, and would be impacted by, the "FIT" representation and would reasonably believe from this representation that the Products are healthy.  However, the Products are not "healthy" as they contain high levels of fat in violation of the United States Food, Drug and Cosmetic Act ("FDCA") and parallel state laws.

5.     The FDCA was enacted, in part, to ensure companies accurately label and identify their products so consumers can choose more healthful diets.  As part of this strategic plan, the FDCA, along with parallel state statutes, have found healthy claims to be misleading in high fat content products such as Defendant's Products at issue in this litigation. Defendant's labeling of the Products as "FIT", and in the manner described above, is in violation of the FDCA and parallel state laws and is deceptive and unlawful.

## PARTIES

6.     Plaintiff Cade Seljak is a resident and citizen of Harrison, New York in Westchester County, New York.

7.     Plaintiff Jacob Bernardi is a resident and citizen of Wilmington, Illinois in Will County, Illinois.

8.     Plaintiff Nancy Taylor is a resident and citizen of Redding, California in Shasta County, California.

9.     Defendant Pervine Foods, LLC, is a Pennsylvania Limited Liability Corporation with its principal place of business at 3900 Veterans Memorial Highway, Suite 371, Bohemia, New York 11716.

10.    Defendant designed, manufactured, warranted, advertised, and sold the Products throughout the United States, including the State of New York, and continues to do so.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which some members of the Classes are citizens of states other the state in which Defendant is incorporated and has its principal place of business.

For example, Plaintiffs Bernardi and Taylor are citizens of Illinois and California, respectively, and Defendant is a citizen of Pennsylvania and New York.

12.     This Court has personal jurisdiction over Defendant because Defendant is a resident of New York and the acts and omissions giving rise to this action occurred in the state of New York.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (c) because a substantial part of the events or omissions giving rise to at least one of Plaintiff's claims occurred in this District.

14.     Venue is also proper under 18 U.S.C. § 1965(a) because Defendant transacts substantial business in this District.

## FACTUAL ALLEGATIONS

15.     Defendant is a "nutritional products" company which states that its mission is to "provide quality nutrition and an unmatched taste[.]"[1]

16.     At all relevant times, Defendant has marketed its Products in a consistent and uniform manner. Defendant sells the Products in all 50 states on its website and through various distributors and retailers across the United States.

### *FITCRUNCH Whey Protein Baked Bars*

17.     Defendant describes the FITCRUNCH Whey Protein Baked Bar Products as "different from other nutrition products[2]." To convince consumers that its Products are better than the competition, Defendants describe FITCRUNCH Whey Protein Baked Bars as "the most delicious eating experiences that you'll find in high protein, low sugar products."[3] Defendants

---

[1] *See* https://fitcrunch.com/about-fitcrunch/ (last visited Sept. 3, 2021).
[2] https://fitcrunch.com/frequently-asked-questions/ (last visited Sept. 3, 2021).
[3] *Id.*

specify that their Products should be consumed "post workout to refuel, as a snack between meals, and any other time when you need protein on the go."[4]

18.    Defendant advertises the FITCRUNCH Whey Protein Baked Bars as "Delicious nutrition for all FIT lifestyles" and utilizes photos of individuals exercising:



---

[4] Id.

[5] See https://www.amazon.com/gp/product/B00EUVI78C/ref=as_li_tl?ie=UTF8&tag=fitcrunch-20&camp=1789&creative=9325&linkCode=as2&creativeASIN=B00EUVI78C&linkId=9042c1 1b95539f25a76c0808c37fdaf8 (last visited Sept. 3, 2021).

19.     Defendant's marketing clearly works. Customer reviews indicate that they buy the

FITCRUNCH Whey Protein Baked Bars because they supposedly support a healthy lifestyle:

a)   Robert H. wrote, in part, on February 28, 2020: "Best tasting health treat[.]"[6]

b)   Richard M. wrote, in part, on January 10, 2019: "They taste great and you know that they are good for you." *Supra*, note 3.

c)   N. Gillispie wrote, in part, on March 15, 2019: "It feels like you are eating a healthy candy bar." *Id.*

d)   Kathy L. wrote, in part, on August 20, 2020: "they are very tasty and good for you, i love them[.]" *Id.*

e)   David Clemons wrote, in part, on January 6, 2020: "Used as a meal replacement while dieting, very tasty and remarkably healthy." *Id.*

f)   Alex R. wrote on January 2, 2019: "Tasty and healthy choice for breakfast." *Id.*

g)   Texas D. wrote on February 3, 2020: "Hard to believe they are healthy. I will definitely reorder." *Id.*

h)   SB wrote on February 28, 2020: "Taste is amazing! I never [knew] healthy could taste so good!" *Id.*

i)   Laura M wrote on August 3, 2020: "My family absolutely loves these protein bars! They are delicious! We especially like that they are relatively low in sugar and high in protein. They make a healthy in between meal snack." *Id.*

j)   Dennis K. wrote, in part, on February 1, 2020: "Great healthy alternative for dessert or between meal snack[.]" *Id.*

20.     As discussed in more detail below, however, Defendant intentionally misleads

consumers into believing the Products are a "healthy" choice by naming and marketing the Product

as "fit" to increase its sale and maximize its profits.

---

[6] *See* Customer Reviews, https://www.amazon.com/dp/B079M3B9CP?th=1 (last visited Sept. 3, 2021).

21.    Plaintiffs would not have purchased or would have paid less for the Products had they known that the Products were deceptively labeled in violation of the FDCA and parallel state laws.

### *FITBAR Energy Bar*

22.    Defendant describes the FITBAR Energy Bar Products as "different from other nutrition products."[7] To convince consumers that its Products are better than the competition, Defendants describe FITBAR Energy Bars as "the most delicious eating experiences that you'll find in high protein, low sugar products."[8] Defendants specify that their Products should be consumed "post workout to refuel, as a snack between meals, and nay other time when you need protein on the go."[9]

23.    Defendant's co-founder, Chef Robert Irvine, states: "I set out to apply my knowledge as a chef and create a brand-new bar that not only delivered great nutritional value within some very narrow constraints, but something that also tasted great," and "No matter your age, gender, fitness goals, or dietary restrictions, I'm confident I've made something that's going to meet your needs."[10]

24.    Like the FITCRUNCH Product, Defendant advertises the FITBAR Energy Bar Products through photos of individuals exhibiting a healthy lifestyle:

---

[7] *See* https://fitcrunch.com/frequently-asked-questions/ (last visited Sept. 3, 2021).
[8] *Id*.
[9] *Id*.
[10] *See* https://myfitbars.com/about/ (last visited Sept. 3, 2021).





12

25.     Customer reviews indicate that they buy the FITBAR Energy Bar Products because

they supposedly support a healthy lifestyle:

   a) Terry Y. wrote, in part, on August 6, 2020: "Yummy, chewy & healthy[.]"[13]

   b) Kevin wrote, in part, on August 10, 2020: "Feels good eating something healthy."
      *Supra*, note 8.

   c) April wrote, in part, on October 31, 2020: "Healthy choice for quick energy." *Id.*

---

[12] *See*
https://www.amazon.com/gp/product/B08BZY3TH8/ref=as_li_tl?ie=UTF8&tag=fitcrunch-
20&camp=1789&creative=9325&linkCode=as2&creativeASIN=B08BZY3TH8&linkId=53ec22
82b87a47c774ae9eb14d1c7f16 (last visited Sept. 3, 2021).
[13] *See* Customer Reviews, https://www.amazon.com/dp/B08BZY3TH8?th=1 (last visited Sept. 3,
2021).

    d)  Gary G. wrote, in part, on August 16, 2020: "it's got a good flavor and it's a healthy snack or alight meal with a banana[.]" *Id.*

    e)  Gerald B. wrote, in part, on August 12, 2020: "Healthy Snack[.]" *Id.*

    f)  Dane H. wrote, in part, on September 28, 2020: "Delicious! Checks all the healthy boxes too. Perfect for any outdoor activity." *Id.*

26.    As discussed in more detail below, however, Defendant intentionally misleads consumers into believing the Products are a healthy choice by naming and marketing the Product as "FIT" to increase its sale and maximize its profits.

27.    Plaintiffs would not have purchased or would have paid less for the Products had they known that the Products were deceptively labeled.

### *Labeling Requirements And Regulations*

28.    The Products' names "FITCRUNCH" and "FITBAR," also referred to in the United States Food and Drug Administration ("FDA") regulations as the "statement of identity," is prominently stated on the "principal display panel," or the front label, of the Products.

29.    Under the applicable FDA regulation, the Product label's statement of identity must be an appropriate descriptive name that is not misleading. 21 C.F.R. § 101.3(b)(3).

30.    Pursuant to 21 U.S.C. § 321(ff), Defendant's Product is a "food" regulated by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, ("FDCA") and FDCA regulations.

31.    Under section 403(r)(1)(A) of the FDCA (21 U.S.C. 343(r)(1)(A)), a food is mislabeled if it bears claims, either express or implied, that characterizes the level of a nutrient which is of a type required to be declared in nutrition labeling unless the claim is made in accordance with a regulatory definition established by FDA.

32.    21 CFR 101.65(d)(2) of the FDA provides:

You may use the term "healthy" or related terms (e.g., "health," "healthful," "healthfully," "healthfulness," "healthier," "healthiest," "healthily," and

"healthiness") as an implied nutrient content claim on the label or in labeling of a food that is useful in creating a diet that is consistent with dietary recommendations if:

(i)      The food meets the following conditions for fat, saturated fat, cholesterol, and other nutrients:

| If the food is... | The fat level must be... | The saturated fat level must be... | The cholesterol level must be... | The food must contain... |
|---|---|---|---|---|
| (A) A raw fruit or vegetable | Low fat as defined in § 101.62(b)(2) | Low saturated fat as defined in § 101.62(c)(2) | The disclosure level for cholesterol specified in § 101.13(h) or less | N/A |
| (B) A single-ingredient or a mixture of frozen or canned fruits and vegetables [1] | Low fat as defined in § 101.62(b)(2) | Low saturated fat as defined in § 101.62(c)(2) | The disclosure level for cholesterol specified in § 101.13(h) or less | N/A |
| (C) An enriched cereal-grain product that conforms to a standard of identity in part 136, 137 or 139 of this chapter | Low fat as defined in § 101.62(b)(2) | Low saturated fat as defined in § 101.62(c)(2) | The disclosure level for cholesterol specified in § 101.13(h) or less | N/A |
| (D) A raw, single-ingredient seafood or game meat | Less than 5 grams (g) total fat per RA [2] and per 100 g | Less than 2 g saturated fat per RA and per 100 g | Less than 95 mg cholesterol per RA and per 100 g | At least 10 percent of the RDI [3] or the DRV [4] per RA of one or more of vitamin A, vitamin C, calcium, iron, protein, or fiber |
| (E) A meal product as defined in § 101.13(l) or a main dish product as defined in § 101.13(m) | Low fat as defined in § 101.62(b)(3) | Low saturated fat as defined in § 101.62(c)(3) | 90 mg or less cholesterol per LS [5] | At least 10 percent of the RDI or DRV per LS of two nutrients (for a main dish product) or of three nutrients (for a meal product) of: vitamin A, vitamin C, calcium, iron, protein, or fiber |

| (F) A food not specifically listed in this table | Low fat as defined in § 101.62(b)(2) | Low saturated fat as defined in § 101.62(c)(2) | The disclosure level for cholesterol specified in § 101.13(h) or less | At least 10 percent of the RDI or the DRV per RA of one or more of vitamin A, vitamin C, calcium, iron, protein or fiber |
|---|---|---|---|---|

33.     Section 101.62(b)(2) defines low fat as: "contains 3 g or less of fat per reference amount customarily consumed[.]"

34.     The term "FIT" is defined by Merriam-Webster as "sound physically and mentally: HEALTHY."[14] The terms "fit" and "healthy" are synonymous with one another.

35.     Further, the Federal Trade Commission has stated that synonyms of the statutorily defined terms for Nutrient Content Claims will also face enforcement action for being misleading.[15]

36.     Both the FDA and FTC believe these types of claims, including their synonyms, to be misleading to consumers.

37.     Defendant intentionally named and marketed the Product with the term "FIT" to make the Products stand out to consumers. In doing so, consumers were misled into believing that the Products are healthy.

38.     However, pursuant to the FDCA and parallel state statutes, the Products are not healthy. Therefore, Defendant's Products are misleading under the FDCA, and parallel state statutes, because the Products contain well over 3 grams of fat.

39.     Further, the FDA states in their Guidance for the Industry regarding "healthy" claims, that they intend to exercise enforcement discretion where the products: 1) are not low in

---

[14] *See* https://www.merriam-webster.com/dictionary/fit (last visited Sept. 3, 2021).
[15] *See* https://www.ftc.gov/public-statements/1994/05/enforcement-policy-statement-food-advertising#44

fat, but have a fat profile makeup of predominately mono and polyunsaturated fats; or 2) contain

at least ten percent of the Daily Value (DV) per reference amount customarily consumed (RACC)

of potassium or Vitamin D".[16]

40.     The FITCRUNCH Peanut Butter & Jelly bars contain 8 grams of Saturated Fat and

8 grams of mono and polyunsaturated fats with 16 grams of Total Fat. The mono and

polyunsaturated fats are clearly and factually not the "majority" of the fat content contained within

the Product, and have far below 10% the DV of potassium and Vitamin D:



## PEANUT BUTTER AND JELLY
### NATURALLY FLAVORED

| Nutrition Facts | | Amount/serving | % Daily Value* | Amount/serving | % Daily Value* | |
|---|---|---|---|---|---|---|
| 1 serving per container | | **Total Fat** 16g | **21%** | **Total Carbohydrate** 27g | **10%** | *The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice. |
| **Serving size** 1 Bar (88g) | | Saturated Fat 8g | **40%** | Dietary Fiber 2g | **7%** | |
| | | Monounsaturated Fat 6g | | Total Sugars 6g | | |
| | | Polyunsaturated Fat 2g | | Includes 5g of Added Sugars | **10%** | |
| | | Trans Fat 0g | | Sugar Alcohol 16g | | |
| **Calories** per serving **380** | | **Cholesterol** 30mg | **10%** | **Protein** 30g | **60%** | |
| | | **Sodium** 490mg | **21%** | | | |
| | | Vitamin D 0.1 mcg 0% • Calcium 78mg 6% | | Iron 1.8mg 10% • Potassium 270mg 6% | | |

**INGREDIENTS:** PROTEIN BLEND (WHEY PROTEIN ISOLATE, WHEY PROTEIN CONCENTRATE), VEGETABLE OILS (PALM, PALM KERNEL, SOYBEAN), PEANUTS, SOY PROTEIN ISOLATE, SUGAR, VEGETABLE GLYCERIN, GELATIN, PEAR PUREE, SORBITOL, WATER, AND APPLE JUICE. **CONTAINS 2% OR LESS OF THE FOLLOWING:** BROWN RICE FLOUR, WHEY, RASPBERRY PUREE, SALT, NATURAL FLAVORS, BAKING SODA, POTASSIUM SORBATE, SUNFLOWER LECITHIN, MONO AND DIGLYCERIDES, SOY LECITHIN, VITAMIN A PALMITATE, BETA-CAROTENE, ELDERBERRY JUICE, MALTITOL, REDUCED MINERAL WHEY POWDER, ALMOND, AND SUCRALOSE. **CONTAINS MILK, SOY, ALMOND, AND PEANUT PRODUCTS. MANUFACTURED IN A PLANT THAT PROCESSES MILK, SOY, WHEAT, TREE NUT, PEANUT, FISH, AND EGG PRODUCTS.**

©2019 CAREFULLY MANUFACTURED FOR PERVINE FOODS, LLC. PA 15236 | 1-844-850-5564
**PRODUCT QUESTION?** EMAIL: CUSTOMERSERVICE@FITCRUNCH.COM
MAY BE PRODUCED WITH GENETIC ENGINEERING
LEARN MORE AT **WWW.FITCRUNCH.COM**          **MADE IN USA**

PROUD SUPPORTER OF



[17]

---

[16] *See* https://www.fda.gov/media/100520/download (last visited Sept. 4, 2021).
[17] *See* https://fitcrunch.com/product/fitcrunch-peanut-butter-jelly-12ct-full-size/ (last visited Sept. 13, 2021).

41.     The FITCRUNCH Peanut Butter bars contain 8 grams of Saturated Fat and 8 grams of mono and polyunsaturated fats with 16 grams of Total Fat. The mono and polyunsaturated fats are clearly and factually not the "majority" of the fat content contained within the Product, and have far below 10% the DV of potassium and Vitamin D:



| **Nutrition Facts** | Amount/serving | % Daily Value* | Amount/serving | % Daily Value* | |
|---|---|---|---|---|---|
| 1 serving per container<br>**Serving size**<br>**1 Bar (88g)** | **Total Fat** 16g | **21%** | **Total Carbohydrate** 27g | **10%** | *The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice. |
| | Saturated Fat 8g | **40%** | Dietary Fiber 2g | **7%** | |
| **Calories** **380**<br>per serving | Monounsaturated Fat 6g | | Total Sugars 6g | | |
| | Polyunsaturated Fat 2g | | Includes 5g of Added Sugars | **10%** | |
| | *Trans Fat* 0g | | Sugar Alcohol 16g | | |
| | **Cholesterol** 30mg | **10%** | **Protein** 30g | **60%** | |
| | **Sodium** 490mg | **21%** | | | |
| | Vitamin D 0.1 mcg 0% • Calcium 78mg 6% | | Iron 1.8mg 10% • Potassium 270mg 6% | | |

**INGREDIENTS:** PROTEIN BLEND (WHEY PROTEIN ISOLATE, WHEY PROTEIN CONCENTRATE), SOY PROTEIN ISOLATE, PEANUTS, VEGETABLE GLYCERIN, VEGETABLE OILS (PALM AND PALM KERNEL), SUGAR, SORBITOL, GELATIN [BOVINE], PALM OIL, BROWN RICE FLOUR, MALTITOL, AND WATER. **CONTAINS 2% OR LESS OF THE FOLLOWING:** CORN SYRUP, COCOA (PROCESSED WITH ALKALI), SALT, SUNFLOWER OIL, MONOGLYCERIDES, DEXTROSE, MALTODEXTRIN, CARAMEL COLOR, VANILLA, SODIUM CASEINATE, PROPYLENE GLYCOL MONO-ESTERS, SOY LECITHIN, NATURAL FLAVORS, TAPIOCA STARCH, SUCRALOSE, ACETYLATED MONOGLYCERIDES, MONO AND DIGLYCERIDES, NATURAL TOCOPHEROLS, BETA-CAROTENE, VITAMIN A PALMITATE, CITRIC ACID, WHEY, POTASSIUM SORBATE, SILICON DIOXIDE, ALMOND, AND BAKING SODA. **CONTAINS MILK, SOY, ALMOND, AND PEANUT PRODUCTS. MANUFACTURED IN A PLANT THAT PROCESSES MILK, SOY, WHEAT, TREE NUT, PEANUT, AND EGG PRODUCTS.**

©2019 CAREFULLY MANUFACTURED FOR PERVINE FOODS, LLC. PA 15236 | 1-844-850-5564
**PRODUCT QUESTION?** EMAIL: CUSTOMERSERVICE@FITCRUNCH.COM
MAY BE PRODUCED WITH GENETIC ENGINEERING
LEARN MORE AT **WWW.FITCRUNCH.COM**          **MADE IN USA**

PROUD SUPPORTER OF
ROBERT IRVINE FOUNDATION

[18]

---

[18] *See* https://fitcrunch.com/product/fitcrunch-peanut-butter-12ct-full-size/ (last visited Sept. 13, 2021).

42.    The FITCRUNCH Chocolate Chip Cookie Dough bars contain 8 grams of Saturated Fat and 8 grams of mono and polyunsaturated fats with 16 grams of Total Fat. The mono and polyunsaturated fats are clearly and factually not the "majority" of the fat content contained within the Product, and have far below 10% the DV of potassium and Vitamin D:

## CHOCOLATE CHIP COOKIE DOUGH
### NATURALLY FLAVORED

# Nutrition Facts

1 serving per container
**Serving size**
**1 Bar (88g)**

**Calories** per serving **380**

| Amount/serving | % Daily Value* | Amount/serving | % Daily Value* |
|---|---|---|---|
| **Total Fat** 16g | **21%** | **Total Carbohydrate** 27g | **10%** |
| Saturated Fat 8g | **40%** | Dietary Fiber 2g | **7%** |
| Monounsaturated Fat 6g | | Total Sugars 6g | |
| Polyunsaturated Fat 2g | | Includes 5g of Added Sugars | **10%** |
| *Trans Fat* 0g | | Sugar Alcohol 16g | |
| **Cholesterol** 30mg | **10%** | **Protein** 30g | **60%** |
| **Sodium** 490mg | **21%** | | |

Vitamin D 0.1 mcg 0% • Calcium 78mg 6% • Iron 1.8mg 10% • Potassium 270mg 6%

* The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

**INGREDIENTS:** PROTEIN BLEND (WHEY PROTEIN ISOLATE, WHEY PROTEIN CONCENTRATE), SOY PROTEIN ISOLATE, MALTITOL, VEGETABLE GLYCERIN, VEGETABLE OILS (PALM AND PALM KERNEL), SORBITOL, COCOA (PROCESSED WITH ALKALI), PALM OIL, GELATIN [BOVINE], CORN SYRUP, SUGAR, AND WATER. **CONTAINS 2% OR LESS OF THE FOLLOWING:** COCOA BUTTER, BROWN RICE FLOUR, SUNFLOWER OIL, SOY LECITHIN, NATURAL FLAVORS, SALT, SOYBEAN OIL, BAKING SODA, MALTODEXTRIN, SODIUM CASEINATE, PROPYLENE GLYCOL MONO-ESTERS, TAPIOCA STARCH, ACETYLATED MONOGLYCERIDES, MONO AND DIGLYCERIDES, SUCRALOSE, POTASSIUM SORBATE, WHEY, BETA-CAROTENE, VITAMIN A PALMITATE, NATURAL TOCOPHEROLS, ALMOND, PEANUT, AND SILICON DIOXIDE. **CONTAINS MILK, SOY, ALMOND, AND PEANUT PRODUCTS. MANUFACTURED IN A PLANT THAT PROCESSES MILK, SOY, WHEAT, TREE NUT, PEANUT, AND EGG PRODUCTS.**

©2019 CAREFULLY MANUFACTURED FOR PERVINE FOODS, LLC. PA 15236 | 1-844-850-5564
**PRODUCT QUESTION?** EMAIL: CUSTOMERSERVICE@FITCRUNCH.COM
MAY BE PRODUCED WITH GENETIC ENGINEERING
LEARN MORE AT **WWW.FITCRUNCH.COM**        **MADE IN USA**

PROUD SUPPORTER OF

[19]

43.    The FITCRUNCH Caramel Peanut bars contain 8 grams of Saturated Fat and 8 grams of mono and polyunsaturated fats with 16 grams of Total Fat. The mono and polyunsaturated

---

[19] *See* https://fitcrunch.com/product/fitcrunch-chocolate-chip-cookie-dough-12ct-full-size/ (last visited Sept. 13, 2021).

fats are clearly and factually not the "majority" of the fat content contained within the Product, and have far below 10% the DV of potassium and Vitamin D:



| Nutrition Facts | Amount/serving | % Daily Value* | Amount/serving | % Daily Value* |
|---|---|---|---|---|
| 1 serving per container | Total Fat 16g | 21% | Total Carbohydrate 27g | 10% |
| Serving size 1 Bar (88g) | Saturated Fat 8g | 40% | Dietary Fiber 2g | 7% |
| | Monounsaturated Fat 6g | | Total Sugars 6g | |
| Calories per serving 380 | Polyunsaturated Fat 2g | | Includes 5g of Added Sugars | 10% |
| | Trans Fat 0g | | Sugar Alcohol 16g | |
| | Cholesterol 30mg | 10% | Protein 30g | 60% |
| | Sodium 490mg | 21% | | |

*The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

Vitamin D 0.1 mcg 0% • Calcium 78mg 6% • Iron 1.8mg 10% • Potassium 270mg 6%

**INGREDIENTS:** PROTEIN BLEND (WHEY PROTEIN ISOLATE, WHEY PROTEIN CONCENTRATE, MILK PROTEIN ISOLATE), MALTITOL, SOY PROTEIN ISOLATE, VEGETABLE OILS (PALM, PALM KERNEL), VEGETABLE GLYCERIN, NON-FAT DRY MILK, PEANUTS, SORBITOL, SUGAR, GELATIN [BOVINE], WATER, AND FRACTIONATED PALM KERNEL OIL. **CONTAINS 2% OR LESS OF THE FOLLOWING:** COCOA (PROCESSED WITH ALKALI), CARAMEL COLOR, BROWN RICE FLOUR, MONOGLYCERIDES, CORN SYRUP, NATURAL FLAVORS, SALT, HEAVY CREAM, SOY LECITHIN, CARRAGEENAN, DISODIUM PHOSPHATE, MONO & DIGLYCERIDES, CITRIC ACID, WHEY, BETA-CAROTENE, VITAMIN A PALMITATE, TAPIOCA STARCH, BAKING SODA, POTASSIUM SORBATE, ALMOND, AND SUCRALOSE. **CONTAINS MILK, SOY, ALMOND, AND PEANUT PRODUCTS. MANUFACTURED IN A PLANT THAT PROCESSES MILK, SOY, WHEAT, TREE NUT, PEANUT, AND EGG PRODUCTS.**

©2019 CAREFULLY MANUFACTURED FOR PERVINE FOODS, LLC. PA 15236 | 1-844-850-5564
**PRODUCT QUESTION?** EMAIL: CUSTOMERSERVICE@FITCRUNCH.COM
MAY BE PRODUCED WITH GENETIC ENGINEERING
LEARN MORE AT **WWW.FITCRUNCH.COM**          **MADE IN USA**

PROUD SUPPORTER OF

20

44.     The Snack Size FITCRUNCH Chocolate Peanut Butter bars contain 4 grams of Saturated Fat and 4 grams of mono and polyunsaturated fats with 8 grams of Total Fat. The mono and polyunsaturated fats are clearly and factually not the "majority" of the fat content contained within the Product, and have far below 10% the DV of potassium and Vitamin D:

---

[20] *See* https://fitcrunch.com/product/fitcrunch-caramel-peanut-12ct-full-size/ (last visited Sept. 13, 2021).

## CHOCOLATE PEANUT BUTTER
### NATURALLY FLAVORED

# Nutrition Facts

1 serving per container
**Serving size**
**1 Bar (46g)**

**Calories** per serving **190**

| Amount/serving | % Daily Value* | Amount/serving | % Daily Value* |
|---|---|---|---|
| **Total Fat** 8g | **10%** | **Total Carbohydrate** 14g | **5%** |
| Saturated Fat 4g | **20%** | Dietary Fiber 1g | **4%** |
| Monounsaturated Fat 3g | | Total Sugars 3g | |
| Polyunsaturated Fat 1g | | Includes 2g of Added Sugars | **4%** |
| Trans Fat 0g | | Sugar Alcohol 8g | |
| **Cholesterol** 10mg | **3%** | **Protein** 16g | **32%** |
| **Sodium** 200mg | **9%** | | |

Vitamin D 0.05mcg 0% • Calcium 39mg 4% • Iron 0.8mg 4% • Potassium 135mg 2%

\* The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

**INGREDIENTS:** PROTEIN BLEND (WHEY PROTEIN ISOLATE, WHEY PROTEIN CONCENTRATE), SOY PROTEIN ISOLATE, PEANUTS, VEGETABLE GLYCERIN, VEGETABLE OILS (PALM AND PALM KERNEL), SUGAR, SORBITOL, GELATIN [BOVINE], PALM OIL, BROWN RICE FLOUR, MALTITOL, AND WATER. **CONTAINS 2% OR LESS OF THE FOLLOWING:** CORN SYRUP, COCOA (PROCESSED WITH ALKALI), SALT, SUNFLOWER OIL, MONOGLYCERIDES, DEXTROSE, MALTODEXTRIN, CARAMEL COLOR, VANILLA, SODIUM CASEINATE, PROPYLENE GLYCOL MONO-ESTERS, SOY LECITHIN, NATURAL FLAVORS, TAPIOCA STARCH, SUCRALOSE, ACETYLATED MONOGLYCERIDES, MONO AND DIGLYCERIDES, NATURAL TOCOPHEROLS, BETA-CAROTENE, VITAMIN A PALMITATE, CITRIC ACID, WHEY, POTASSIUM SORBATE, SILICON DIOXIDE, ALMOND, AND BAKING SODA. **CONTAINS MILK, SOY, ALMOND, AND PEANUT PRODUCTS. MANUFACTURED IN A PLANT THAT PROCESSES MILK, SOY, WHEAT, TREE NUT, PEANUT, AND EGG PRODUCTS.**

©2019 CAREFULLY MANUFACTURED FOR PERVINE FOODS, LLC. PA 15236 | 1-844-850-5564
**PRODUCT QUESTION?** EMAIL: CUSTOMERSERVICE@FITCRUNCH.COM
MAY BE PRODUCED WITH GENETIC ENGINEERING
LEARN MORE AT **WWW.FITCRUNCH.COM**          **MADE IN USA**

PROUD SUPPORTER OF


21

45.     The Snack Size FITCRUNCH Milk & Cookies bars contain 8 grams of Saturated Fat and 3 grams of mono and polyunsaturated fats with 11 grams of Total Fat. The mono and polyunsaturated fats are clearly and factually not the "majority" of the fat content contained within the Product, and have far below 10% the DV of potassium and Vitamin D:

---

[21] *See* https://fitcrunch.com/product/fitcrunch-chocolate-peanut-butter-9ct-snack-size/ (last visited Sept. 13, 2021).



**MILK & COOKIES**
*ARTIFICIALLY FLAVORED*

# Nutrition Facts

1 serving per container
**Serving size**
**1 Bar (46g)**

**Calories** 210
per serving

| Amount/serving | % Daily Value* |
|---|---|
| **Total Fat** 11g | **14%** |
| Saturated Fat 8g | **40%** |
| Monounsaturated Fat 2g | |
| Polyunsaturated Fat 1g | |
| *Trans Fat* 0g | |
| **Cholesterol** 15mg | **5%** |
| **Sodium** 130mg | **6%** |

| Amount/serving | % Daily Value* |
|---|---|
| **Total Carbohydrate** 16g | **6%** |
| Dietary Fiber 1g | **4%** |
| Total Sugars 3g | |
| Includes 2g of Added Sugars | **4%** |
| Sugar Alcohol 11g | |
| **Protein** 16g | **32%** |

Vitamin D 0mcg 6%  •  Calcium 65mg 6%  •  Iron 1mg 6%  •  Potassium 89mg 2%

* The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

**INGREDIENTS:** PROTEIN BLEND (WHEY PROTEIN ISOLATE, WHEY PROTEIN CONCENTRATE), VEGETABLE OILS (PALM KERNEL, PALM), MALTITOL, SOY PROTEIN ISOLATE, GLYCERIN, GELATIN [BOVINE], SORBITOL, SUGAR, COCOA (PROCESSED WITH ALKALI), WATER. **CONTAINS 2% OR LESS OF THE FOLLOWING:** GLUCOSE SYRUP, TAPIOCA STARCH, NATURAL FLAVOR, SUNFLOWER OIL, SUCRALOSE, SUNFLOWER LECITHIN, SOYBEAN OIL, SALT, BAKING SODA, TITANIUM DIOXIDE, VANILLA POWDER, MALTODEXTRIN, SODIUM CASEINATE, PROPYLENE GLYCOL MONO ESTERS, POTASSIUM SORBATE, MONO & DIGLYCERIDES, SOY LECITHIN, WHEY, ACETYLATED MONOGLYCERIDES, BETA CAROTENE, VITAMIN A PALMITATE, SILICON DIOXIDE, NATURAL TOCOPHEROLS, PEANUT AND ALMOND. **CONTAINS MILK, SOY, ALMOND, AND PEANUT PRODUCTS. MANUFACTURED IN A PLANT THAT PROCESSES MILK, SOY, WHEAT, TREE NUT, PEANUT, AND EGG PRODUCTS.**

©2021 CAREFULLY MANUFACTURED FOR PERVINE FOODS, LLC. PA 15236 | 1-844-850-5564
**PRODUCT QUESTION?** EMAIL: HELP@FITCRUNCH.COM
MAY BE PRODUCED WITH GENETIC ENGINEERING
LEARN MORE AT **WWW.FITCRUNCH.COM**
**MADE IN USA WITH DOMESTIC AND IMPORTED INGREDIENTS**

PROUD SUPPORTER OF



ROBERT IRVINE FOUNDATION

22

46.    The Snack Size FITCRUNCH Apple Pie bars contain 8 grams of Saturated Fat and 2 grams of mono and polyunsaturated fats with 10 grams of Total Fat. The mono and polyunsaturated fats are clearly and factually not the "majority" of the fat content contained within the Product, and have far below 10% the DV of potassium and Vitamin D:

---

22 *See* https://www.amazon.com/Fit-Crunch-Protein-Gluten-Cookies/dp/B08R42QV5V?ref_=ast_sto_dp (last visited Sept. 13, 2021).

**APPLE PIE**
*NATURALLY FLAVORED*

# Nutrition Facts

1 serving per container
**Serving size**
**1 Bar (46g)**

**Calories** **210**
per serving

| Amount/serving | % Daily Value* | Amount/serving | % Daily Value* |
|---|---|---|---|
| **Total Fat** 10g | **13%** | **Total Carbohydrate** 14g | **5%** |
| Saturated Fat 8g | **40%** | Dietary Fiber 0g | **0%** |
| Monounsaturated Fat 1g | | Total Sugars 3g | |
| Polyunsaturated Fat 1g | | Includes 2g of Added Sugars | **4%** |
| Trans Fat 0g | | Sugar Alcohol 10g | |
| **Cholesterol** 15mg | **5%** | **Protein** 16g | **32%** |
| **Sodium** 95mg | **4%** | | |

Vitamin D 1mcg 6%  •  Calcium 51mg 4%  •  Iron 0mg 0%  •  Potassium 55mg 2%

\* The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

**INGREDIENTS:** PROTEIN BLEND (WHEY PROTEIN ISOLATE, WHEY PROTEIN CONCENTRATE), MALTITOL, VEGETABLE OILS (PALM KERNEL, PALM), SOY PROTEIN ISOLATE, GLYCERIN, GELATIN [BOVINE], SORBITOL, GRAHAM CRUMBLE (TAPIOCA STARCH, SUGAR, RICE FLOUR, PALM OIL, MOLASSES, NATURAL FLAVOR, SALT, CARAMEL COLOR, SODIUM BICARBONATE, SOY LECITHIN, XANTHAN GUM, ANNATTO). **CONTAINS 2% OR LESS OF THE FOLLOWING:** WATER, GLUCOSE SYRUP, BROWN RICE FLOUR, NATURAL FLAVOR, SUNFLOWER OIL, SUGAR, SUCRALOSE, SOYBEAN OIL, SUNFLOWER LECITHIN, TITANIUM DIOXIDE, VANILLA POWDER, SALT, BROWN SUGAR, CINNAMON, BAKING SODA, MALTODEXTRIN, SODIUM CASEINATE, PROPYLENE GLYCOL MONO ESTERS, MONO & DIGLYCERIDES, POTASSIUM SORBATE, NATURAL COLOR (PALM KERNEL OIL, BEET, TURMERIC, ANNATTO, NATURAL RICE BRAN EXTRACT [EMULSIFIER], RED CABBAGE), SOY LECITHIN, WHEY, ACETYLATED MONOGLYCERIDES, BETA CAROTENE, VITAMIN A PALMITATE, SILICON DIOXIDE, NATURAL TOCOPHEROLS, ALMOND AND PEANUT. **CONTAINS MILK, SOY, ALMOND, AND PEANUT PRODUCTS. MANUFACTURED IN A PLANT THAT PROCESSES MILK, SOY, WHEAT, TREE NUT, PEANUT, AND EGG PRODUCTS.**

©2020 CAREFULLY MANUFACTURED FOR PERVINE FOODS, LLC. PA 15236 | 1-844-850-5564
**PRODUCT QUESTION?** EMAIL: CUSTOMERSERVICE@FITCRUNCH.COM
MAY BE PRODUCED WITH GENETIC ENGINEERING
LEARN MORE AT **WWW.FITCRUNCH.COM**
**MADE IN USA WITH DOMESTIC AND IMPORTED INGREDIENTS**

PROUD SUPPORTER OF



ROBERT IRVINE FOUNDATION [23]

47.     The Snack Size FITCRUNCH Peanut Butter & Jelly bars contain 4 grams of Saturated Fat and 4 grams of mono and polyunsaturated fats with 8 grams of Total Fat. The mono and polyunsaturated fats are clearly and factually not the "majority" of the fat content contained within the Product, and have far below 10% the DV of potassium and Vitamin D:

---

[23] *See* https://fitcrunch.com/product/fitcrunch-apple-pie-9ct-snack-size/ (last visited Sept. 13, 2021).

## PEANUT BUTTER AND JELLY
### NATURALLY FLAVORED

# Nutrition Facts

9 servings per container
**Serving size**
**1 Bar (46g)**

# Calories
per serving **190**

| Amount/serving | % Daily Value* | Amount/serving | % Daily Value* |
|---|---|---|---|
| **Total Fat** 8g | **10%** | **Total Carbohydrate** 14g | **5%** |
| Saturated Fat 4g | **20%** | Dietary Fiber 1g | **4%** |
| Monounsaturated Fat 3g | | Total Sugars 3g | |
| Polyunsaturated Fat 1g | | Includes 2g of Added Sugars | **4%** |
| *Trans Fat* 0g | | Sugar Alcohol 8g | |
| **Cholesterol** 10mg | **3%** | **Protein** 16g | **32%** |
| **Sodium** 200mg | **9%** | | |

Vitamin D 0.05mcg 0% • Calcium 39mg 4% • Iron 0.8mg 4% • Potassium 135mg 2%

*The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

**INGREDIENTS:** PROTEIN BLEND (WHEY PROTEIN ISOLATE, WHEY PROTEIN CONCENTRATE), VEGETABLE OILS (PALM, PALM KERNEL, SOYBEAN), PEANUTS, SOY PROTEIN ISOLATE, SUGAR, VEGETABLE GLYCERIN, GELATIN, PEAR PUREE, SORBITOL, WATER, AND APPLE JUICE. **CONTAINS 2% OR LESS OF THE FOLLOWING:** BROWN RICE FLOUR, WHEY, RASPBERRY PUREE, SALT, NATURAL FLAVORS, BAKING SODA, POTASSIUM SORBATE, SUNFLOWER LECITHIN, MONO AND DIGLYCERIDES, SOY LECITHIN, VITAMIN A PALMITATE, BETA-CAROTENE, ELDERBERRY JUICE, MALTITOL, REDUCED MINERAL WHEY POWDER, ALMOND, AND SUCRALOSE. **CONTAINS MILK, SOY, ALMOND, AND PEANUT PRODUCTS. MANUFACTURED IN A PLANT THAT PROCESSES MILK, SOY, WHEAT, TREE NUT, PEANUT, AND EGG PRODUCTS.**

©2019 CAREFULLY MANUFACTURED FOR PERVINE FOODS, LLC. PA 15236 | 1-844-850-5564
**PRODUCT QUESTION?** EMAIL: CUSTOMERSERVICE@FITCRUNCH.COM
MAY BE PRODUCED WITH GENETIC ENGINEERING
LEARN MORE AT **WWW.FITCRUNCH.COM**          **MADE IN USA**

PROUD SUPPORTER OF
ROBERT IRVINE
FOUNDATION [24]

48.     The Snack Size FITCRUNCH Chocolate Chip Cookie Dough bars contain 4 grams of Saturated Fat and 4 grams of mono and polyunsaturated fats with 8 grams of Total Fat. The mono and polyunsaturated fats are clearly and factually not the "majority" of the fat content contained within the Product, and have far below 10% the DV of potassium and Vitamin D:

---

[24] *See* https://fitcrunch.com/product/fitcrunch-peanut-butter-jelly-9ct-snack-size/ (Last visited Sept. 13, 2021).

## CHOCOLATE CHIP COOKIE DOUGH
### NATURALLY FLAVORED

# Nutrition Facts

1 serving per container
**Serving size**
**1 Bar (46g)**

**Calories** **190**
per serving

| Amount/serving | % Daily Value* | Amount/serving | % Daily Value* |
|---|---|---|---|
| **Total Fat** 8g | **10%** | **Total Carbohydrate** 14g | **5%** |
| Saturated Fat 4g | **20%** | Dietary Fiber 1g | **4%** |
| Monounsaturated Fat 3g | | Total Sugars 3g | |
| Polyunsaturated Fat 1g | | Includes 2g of Added Sugars | **4%** |
| *Trans* Fat 0g | | Sugar Alcohol 8g | |
| **Cholesterol** 10mg | **3%** | **Protein** 16g | **32%** |
| **Sodium** 200mg | **9%** | | |

* The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

Vitamin D 0.05mcg 0%  •  Calcium 39mg 4%  •  Iron 0.8mg 4%  •  Potassium 135mg 2%

**INGREDIENTS:** PROTEIN BLEND (WHEY PROTEIN ISOLATE, WHEY PROTEIN CONCENTRATE), SOY PROTEIN ISOLATE, MALTITOL, VEGETABLE GLYCERIN, VEGETABLE OILS (PALM AND PALM KERNEL), SORBITOL, COCOA (PROCESSED WITH ALKALI), PALM OIL, GELATIN [BOVINE], CORN SYRUP, SUGAR, AND WATER. **CONTAINS 2% OR LESS OF THE FOLLOWING:** COCOA BUTTER, BROWN RICE FLOUR, SUNFLOWER OIL, SOY LECITHIN, NATURAL FLAVORS, SALT, SOYBEAN OIL, BAKING SODA, MALTODEXTRIN, SODIUM CASEINATE, PROPYLENE GLYCOL MONO-ESTERS, TAPIOCA STARCH, ACETYLATED MONOGLYCERIDES, MONO AND DIGLYCERIDES, SUCRALOSE, POTASSIUM SORBATE, WHEY, BETA-CAROTENE, VITAMIN A PALMITATE, NATURAL TOCOPHEROLS, ALMOND, PEANUT, AND SILICON DIOXIDE. **CONTAINS MILK, SOY, ALMOND, AND PEANUT PRODUCTS. MANUFACTURED IN A PLANT THAT PROCESSES MILK, SOY, WHEAT, TREE NUT, PEANUT, AND EGG PRODUCTS.**

©2019 CAREFULLY MANUFACTURED FOR PERVINE FOODS, LLC. PA 15236 | 1-844-850-5564
**PRODUCT QUESTION?** EMAIL: CUSTOMERSERVICE@FITCRUNCH.COM
MAY BE PRODUCED WITH GENETIC ENGINEERING
LEARN MORE AT **WWW.FITCRUNCH.COM**          **MADE IN USA**

PROUD SUPPORTER OF


49.     The Snack Size FITCRUNCH Mint Chocolate Chip bars contain 4 grams of Saturated Fat and 4 grams of mono and polyunsaturated fats with 8 grams of Total Fat. The mono and polyunsaturated fats are clearly and factually not the "majority" of the fat content contained within the Product, and have far below 10% the DV of potassium and Vitamin D:

[25] *See* https://fitcrunch.com/product/fitcrunch-chocolate-chip-cookie-dough-9ct-snack-size/ (Last visited Sept. 13, 2021).

## MINT CHOCOLATE CHIP
### NATURALLY FLAVORED

# Nutrition Facts

9 servings per container

**Serving size**
**1 Bar (46g)**

**Calories** per serving **190**

| Amount/serving | % Daily Value* | Amount/serving | % Daily Value* |
|---|---|---|---|
| **Total Fat** 8g | **10%** | **Total Carbohydrate** 14g | **5%** |
| Saturated Fat 4g | **20%** | Dietary Fiber 1g | **4%** |
| Monounsaturated Fat 3g | | Total Sugars 3g | |
| Polyunsaturated Fat 1g | | Includes 2g of Added Sugars | **4%** |
| Trans Fat 0g | | Sugar Alcohol 8g | |
| **Cholesterol** 10mg | **3%** | **Protein** 16g | **32%** |
| **Sodium** 200mg | **9%** | | |

Vitamin D 0.05mcg 0% • Calcium 39mg 4% • Iron 0.8mg 4% • Potassium 135mg 2%

*The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

**INGREDIENTS:** PROTEIN BLEND (WHEY PROTEIN ISOLATE, WHEY PROTEIN CONCENTRATE), VEGETABLE OILS (PALM, PALM KERNEL, SOYBEAN), SOY PROTEIN ISOLATE, MALTITOL, SUGAR, VEGETABLE GLYCERIN, GELATIN [BOVINE], SORBITOL, COCOA (PROCESSED WITH ALKALI), CHOCOLATE LIQUOR, AND COCOA BUTTER. **CONTAINS 2% OR LESS OF THE FOLLOWING:** CORN SYRUP, WATER, BROWN RICE FLOUR, SUNFLOWER OIL, NATURAL FLAVORS, SALT, MALTODEXTRIN, SUNFLOWER LECITHIN, SODIUM CASEINATE, PROPYLENE GLYCOL MONO ESTERS, SOY LECITHIN, POTASSIUM SORBATE, BAKING SODA, MONO AND DIGLYCERIDES, TAPIOCA STARCH, SORBITAN TRISTEARATE, WHEY, ACETYLATED MONOGLYCERIDES, VITAMIN A PALMITATE, NATURAL TOCOPHEROLS, SILICON DIOXIDE, ALMOND, PEANUT, AND SUCRALOSE. **CONTAINS MILK, SOY, ALMOND, AND PEANUT PRODUCTS. MANUFACTURED IN A PLANT THAT PROCESSES MILK, SOY, WHEAT, TREE NUT, PEANUT, AND EGG PRODUCTS.**

©2019 CAREFULLY MANUFACTURED FOR PERVINE FOODS, LLC. PA 15236 | 1-844-850-5564
**PRODUCT QUESTION?** EMAIL: CUSTOMERSERVICE@FITCRUNCH.COM
MAY BE PRODUCED WITH GENETIC ENGINEERING
LEARN MORE AT **WWW.FITCRUNCH.COM**          **MADE IN USA**

PROUD SUPPORTER OF



ROBERT IRVINE FOUNDATION

26

50.     The Snack Size FITCRUNCH Lemon Cake bars contain 6 grams of Saturated Fat and 2 grams of mono and polyunsaturated fats with 8 grams of Total Fat. The mono and polyunsaturated fats are clearly and factually not the "majority" of the fat content contained within the Product, and have far below 10% the DV of potassium and Vitamin D:

---

[26] *See* https://fitcrunch.com/product/fitcrunch-mint-chocolate-chip-9ct-snack-size/ (Last visited Sept. 13, 2021).

## LEMON CAKE
### NATURALLY FLAVORED

# Nutrition Facts

1 serving per container
**Serving size**
**1 Bar (46g)**

**Calories** per serving **190**

| Amount/serving | % Daily Value* | Amount/serving | % Daily Value* |
|---|---|---|---|
| **Total Fat** 8g | **10%** | **Total Carbohydrate** 16g | **6%** |
| Saturated Fat 6g | **30%** | Dietary Fiber 1g | **4%** |
| Monounsaturated Fat 1g | | Total Sugars 3g | |
| Polyunsaturated Fat 1g | | Includes 1g of Added Sugars | **2%** |
| *Trans Fat* 0g | | Sugar Alcohol 8g | |
| **Cholesterol** 20mg | **7%** | **Protein** 16g | **32%** |
| **Sodium** 115mg | **5%** | | |

Vitamin D 0mcg 0%  •  Calcium 43mg 4%  •  Iron 0mg 0%  •  Potassium 62mg 2%

* The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

**INGREDIENTS:** PROTEIN BLEND (WHEY PROTEIN CONCENTRATE, WHEY PROTEIN ISOLATE), SOY PROTEIN ISOLATE, PALM KERNEL OIL, MALTITOL, LEMON LAYER (CONCENTRATED PEAR PUREE, GLUCOSE SYRUP, CONCENTRATED LEMON JUICE, NATURAL FLAVOR, TURMERIC [FOR COLOR]), COLLAGEN, GLYCERIN, SORBITOL, PALM OIL, LEMON FLAVORED DROPS (SUGAR, PALM KERNEL OIL, NONFAT MILK POWDER, WHEY POWDER, ANHYDROUS MILKFAT, NATURAL FLAVORS, SUNFLOWER LECITHIN, CITRIC ACID), WATER. **CONTAINS 2% OR LESS OF THE FOLLOWING:** NATURAL FLAVOR, TITANIUM DIOXIDE, SUNFLOWER LECITHIN, VANILLA POWDER, SOYBEAN OIL, SALT, SUCRALOSE, CITRIC ACID, BAKING SODA, POTASSIUM SORBATE, MONO & DIGLYCERIDES, SOY LECITHIN, BETA CAROTENE, VITAMIN A PALMITATE, NATURAL YELLOW (COCOA BUTTER OIL, RIBOFLAVIN, RICE BRAN EXTRACT [EMULSIFIER]), ALMOND, AND PEANUT. **CONTAINS MILK, SOY, ALMOND, AND PEANUT PRODUCTS. MANUFACTURED IN A PLANT THAT PROCESSES MILK, SOY, WHEAT, TREE NUT, PEANUT, AND EGG PRODUCTS.**

©2020 CAREFULLY MANUFACTURED FOR PERVINE FOODS,
LLC. PA 15236 | 1-844-850-5564
**PRODUCT QUESTION?** EMAIL: CUSTOMERSERVICE@FITCRUNCH.COM
MAY BE PRODUCED WITH GENETIC ENGINEERING
LEARN MORE AT **WWW.FITCRUNCH.COM**          **MADE IN USA**

PROUD SUPPORTER OF



27

51.     The FITBAR Peanut Butter Chocolate energy bars contain 13 grams of Total Fat,

and have far below 10% the DV of potassium and Vitamin D:

---

[27] *See* https://fitcrunch.com/product/fitcrunch-lemon-cake-9ct-snack-size/ (last visited Sept. 13, 2021).

| Nutrition Facts | Amount/serving | % Daily Value* | Amount/serving | % Daily Value* | |
|---|---|---|---|---|---|
| 12 servings per container **Serving size** 1 Bar (64g) | **Total Fat** 13g | **17%** | **Total Carbohydrate** 29g | **11%** | * The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice. |
| | Saturated Fat 2.5g | **13%** | Dietary Fiber 3g | **11%** | |
| | *Trans Fat* 0g | | Total Sugars 13g | | |
| **Calories** per serving **280** | **Cholesterol** 0mg | **0%** | Includes 12g of Added Sugars | **24%** | |
| | **Sodium** 190mg | **8%** | **Protein** 12g | **24%** | |
| | Vitamin D 0mcg 0%  •  Calcium 30mg 2%  •  Iron 0mg 6%  •  Potassium 380mg 8% | | | | |

[28]

52.    The FITBAR Cranberry Vanilla Almond energy bars contain 15 grams of Total Fat, and have far below 10% the DV of potassium and Vitamin D:

| Nutrition Facts | Amount/serving | % Daily Value* | Amount/serving | % Daily Value* | |
|---|---|---|---|---|---|
| 12 servings per container **Serving size** 1 Bar (64g) | **Total Fat** 15g | **19%** | **Total Carbohydrate** 30g | **11%** | * The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice. |
| | Saturated Fat 1.5g | **8%** | Dietary Fiber 4g | **14%** | |
| | *Trans Fat* 0g | | Total Sugars 14g | | |
| **Calories** per serving **280** | **Cholesterol** 0mg | **0%** | Includes 12g of Added Sugars | **24%** | |
| | **Sodium** 140mg | **6%** | **Protein** 12g | **24%** | |
| | Vitamin D 0mcg 0%  •  Calcium 89mg 6%  •  Iron 2mg 10%  •  Potassium 237mg 6% | | | | |

[29]

53.    Defendant's false, deceptive and misleading label statements violate 21 U.S.C. § 343(a)(1) and the statutes adopted by many states, which deem food misbranded when "its labeling is false or misleading in any particular."

54.    Defendant's false, deceptive and misleading label statements are unlawful under State Unfair and Deceptive Acts and Practices Statutes and/or Consumer Protection Acts, which prohibit unfair, deceptive or unconscionable acts in the conduct of trade or commerce.

55.    Further, as explained above, Defendant's claims are misleading to consumers in violation of 21 U.S.C. § 343, which states, "A food shall be deemed to be misbranded—False or misleading label [i]f its labeling is false or misleading in any particular."

56.    The California Sherman Law explicitly incorporates by reference "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the FDCA," as

---

[28] *See* https://myfitbars.com/product/peanut-butter-chocolate/ (last visited Sept. 13, 2021).
[29] *See* https://myfitbars.com/product/cranberry-vanilla-almond/ (last visited Sept. 13, 2021).

the food labeling regulations of California Cal. Health & Saf. Code, § 110100, subd. (a). Thus, a violation of federal food labeling laws is an independent violation of California law and actionable as such.

57.     The New York Food, Drug and Cosmetic Act, New York has expressly adopted the federal food labeling requirements and has stated "[a] food shall be deemed misbranded in accordance with the Federal Food, Drug and Cosmetic Act (21 U.S.C. §343)[.]" Public Health Law §71.05(d). Thus, a violation of federal food labeling laws is an independent violation of New York law and actionable as such.

58.     Under the Illinois Food, Drug and Cosmetic Act, Illinois has expressly adopted the federal food labeling requirements as its own and has indicated that "[a] federal regulation automatically adopted pursuant to this Act takes effect in this State on the date it becomes effective as a Federal regulation." 410 ILCS 620/21(j). Thus, a violation of federal food labeling laws is an independent violation of Illinois law and actionable as such.

59.     Plaintiffs and Class members would not have purchased the Products or would have not paid as much for the products, had they known the truth about the mislabeled and falsely advertised products.

### *Plaintiffs' Purchases of The Products*

**Cade Seljak**

60.     Plaintiff Cade Seljak purchased Peanut Butter flavored FITCRUNCH Protein Bars on or around January 23, February 16, March 18, May 9, and July 19 in 2021 from Amazon.com.

61.     Plaintiff purchased the Product for the low sugar protein to help with muscle gain, and because he believed they were healthy.

62.     Plaintiff paid $31.42, $25.85, $22.49, $31.16, and $29.22 for each of the separate purchases.

63.     If Plaintiff had been aware that the Product did not meet the statutory definition of "Healthy," he would not have purchased the Product or would have paid significantly less.

64.     As a result of Defendant's actions, Plaintiff has incurred damages, including economic damages.

**Jacob Bernardi**

65.     Plaintiff Jacob Bernardi purchased FITCRUNCH Protein Bars on or around July 17, 2021 from ebay.com and in May 2021 from a local nutrition store near him.

66.     Plaintiff purchased the Product for the protein, and because he believed they were healthy.

67.     Plaintiff paid around $3.00 for the Product.

68.     If Plaintiff had been aware that the Product did not meet the statutory definition of "Healthy," he would not have purchased the Product or would have paid significantly less.

69.     As a result of Defendant's actions, Plaintiff has incurred damages, including economic damages.

**Nancy Taylor**

70.     Plaintiff Nancy Taylor purchased two boxs of FITCRUNCH Protein Bars on July 28, 2021, 2021 from a Walmart located in Redding, California.

71.     Plaintiff purchased the Product believing it to be a healthy option that would help her lose weight.

72.    Plaintiff paid $6.98 for a FITCRUNCH Caramel Peanut High Protein Baked Bar and $6.98 for a box of FITCRUNCH Chocolate Peanut Butter, High Protein Baked Bar.

73.    If Plaintiff had been aware that the Product did not meet the statutory definition of "Healthy," she would not have purchased the Product or would have paid significantly less.

74.    As a result of Defendant's actions, Plaintiff has incurred damages, including economic damages.

## CLASS ACTION ALLEGATIONS

75.    Plaintiffs bring this class action lawsuit on behalf of themselves and proposed Classes of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

76.    Plaintiffs seek certification of the following Classes:

**National Class:** During the fullest period allowed by law, all persons in the United States who purchased the Products.

**New York Subclass:** During the fullest period allowed by law, all persons in the State of New York who purchased the Products.

**California Subclass:** During the fullest period allowed by law, all persons in the State of California who purchased the Products.

**Illinois Subclass:** During the fullest period allowed by law, all persons in the States of Illinois who purchased the Products.

77.    Members of the classes described are referred to as "Class Members" or members of the "Classes."

78.    The following are excluded from the Classes: (1) any Judge presiding over this action and members of his or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parent has a controlling interest (as well as current or former employees, officers, and directors); (3) persons who properly execute

and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

79.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

80.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that individual joinder of all Class Members is impracticable. On information and belief, Class Members number in the thousands to millions. The precise number or identification of members of the Classes are presently unknown to Plaintiffs but may be ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

81.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes, which predominate over any questions affecting individual members of the Classes. These common questions of law or fact include, but are not limited to, the following:

a)  Whether Defendant made false and/or misleading statements to the consuming public concerning the use of the word "FIT" of the Products;

b)  Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive and misleading,

c) Whether the Products fail to conform with the requirements of the FDCA and/or parallel state laws;

d) Whether Defendant's representations concerning the Products were likely to deceive a reasonable consumer;

e) Whether Defendant's representations caused injury to Plaintiffs and Class and Subclass Members; and

f) Whether Plaintiffs and Class and Subclass Members are entitled to damages.

82.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and the other Class Members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

83.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the claims of the other Class Members because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Defendant in violation of law as complained of herein. Further, the damages of each Class Member were caused directly by Defendant's wrongful conduct in violation of the law as alleged herein.

84.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate representatives of the Classes because they are members of the Classes and their interests do not conflict with the interests of the Class Members they seek to represent. Plaintiffs have also retained counsel competent and experienced in complex commercial and class action litigation. Plaintiffs and their counsel intend to prosecute this action vigorously for the

benefit of all Class Members. Accordingly, the interests of the Class Members will be fairly and adequately protected by Plaintiffs and their counsel.

85.    **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

<u>**CLAIMS ALLEGED**</u>

**COUNT I**
**Violation of New York General Business Law § 349**
**(On Behalf Of Plaintiff Seljak And The New York Subclass)**

86.    Plaintiff Seljak repeats and re-alleges the allegations above as if set forth herein.

87.    New York Business Law §349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service[.]" N.Y. GEN. BUS. LAW § 349.

88.    Defendant's actions occurred in the conduct of business, trade or commerce.

89.     Defendant's foregoing acts and practices, including its omissions, were directed at consumers.

90.     Defendant's foregoing deceptive acts and practices, including its omissions, were material, in part, because they concerned an essential part of the Products ingredients and functionality.

91.     Defendant's conduct, as described in this Complaint, constitutes "deceptive acts or practices" within the meaning of the New York GBL. All of Defendant's deceptive acts and practices, which were intended to mislead consumers in a material way in the process of purchasing Defendant's Products, constitute conduct directed at consumers.

92.     As purveyors in the highly lucrative protein bar market, Defendant knows that when it comes to labeling and marketing, words matter. This is why Defendant chose to name the Products "FIT" crunch, and to emblazon the word "FIT" on the front and center of each Product label, in a bold all-capitalized font, where it cannot be missed by consumers.

93.     Defendant chose to label the Products in this way to impact consumer choices and gain market dominance, as it is well aware that all consumers who purchased the Products were exposed to, and would be impacted by, the "FIT" representation and would reasonably believe from this representation that the Products are healthy.  However, the Products are not "healthy", in violation of the United States Food, Drug and Cosmetic Act ("FDCA") and parallel state laws.

94.     Defendant's deceptive marketing has been successful. Customer reviews indicate that they buy the FITCRUNCH Whey Protein Baked Bars because they supposedly support a healthy lifestyle.

95.     As described herein, Defendant's false, deceptive and misleading label statements violate 21 U.S.C. § 343(a)(1) and the statutes adopted by many states, which deem food misbranded when "its labeling is false or misleading in any particular."

96.     Defendant's foregoing deceptive and unfair acts and practices, including its omissions, were and are deceptive acts or practices in violation of the New York's General Business Law § 349, Deceptive Acts and Practices, N.Y. Gen. Bus. Law 349, *et seq*., in that:

    a)  Defendant manufactured, labeled, packaged, marketed, advertised, distributed, and/or sold the Products with the word "FIT" on the front and center of each Product label, in a bold all-capitalized font, where it cannot be missed by consumers, in order to convince consumers that the products are healthy when they knew, or should have known that the products are not "healthy" in violation of the FDCA and parallel state laws.

    b)  Defendant further deceived reasonable consumers into believing that the Products were fit for their intended purpose of a healthy lifestyle, and omitted and failed to disclose that the Products are not healthy as defined by the FDCA and parallel state laws.

97.     Plaintiff Seljak and the New York Subclass Members suffered damages when they purchased the Products. Defendant's unconscionable, deceptive and/or unfair practices caused actual damages to Plaintiffs and the New York Subclass Members who were unaware that the Products are not "healthy" in violation of the FDCA and parallel state laws.

98.     Defendant's foregoing deceptive acts and practices, including its omissions, were likely to deceive, and did deceive, consumers acting reasonably under the circumstances. Consumers, including Plaintiff Seljak and putative New York Subclass Members, would not have

purchased their Products had they known that the Products are not "healthy" as defined by the FDCA and parallel state laws.

99.     As a direct and proximate result of Defendants' deceptive acts and practices, including its omissions, Plaintiff Seljak and New York Subclass Members have been damaged as alleged herein, and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

100.     In addition, Plaintiff Seljak and New York Subclass Members seek equitable and injunctive relief against Defendant's on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

101.     On October 6, 2021, Plaintiff Seljak gave notice to Defendant of its violations of the New York General Business Law § 349 On October 21, 2021, Defendant responded to Plaintiff Seljak by letter, but did not remedy its breaches of New York General Business Law § 349**.**

102.     Therefore, within 30 days of receiving notice, Defendant did not take the necessary steps outlined in Plaintiff Seljak's notice letter to remedy their breach of New York General Business Law § 349 for the Products.

103.     In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

**COUNT II**
**Violation of New York General Business Laws § 350**
**(On Behalf Of Plaintiff Seljak And The New York Subclass)**

104.     Plaintiff Seljiak repeats and re-alleges the allegations above as if set forth herein.

105.     New York Business Law §350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service[.]" N.Y. GEN. BUS. LAW § 350.

106.     Defendant's actions occurred in the conduct of business, trade or commerce.

33

107.    Defendant's foregoing acts and practices, including its advertising, were directed at consumers.

108.    Defendant's conduct, as described in this Complaint, constitutes "false advertising" within the meaning of the New York GBL, as Defendant publicly disseminated misleading and false advertisements through advertising and marketing statements, suggesting that their Products were healthy.

109.    Defendant's foregoing, consumer-oriented, unfair or deceptive acts and practices, including its advertising, representations, and omissions, constitutes false and misleading advertising in a material way in violation of the New York's General Business Law § 350.

110.    Defendant's false, misleading and deceptive advertising and representations include misrepresenting and misleadingly marketing and labeling the products were fit for their intended purpose of a healthy lifestyle and omitting and failing to disclose that the Products are not healthy as defined by the FDCA and parallel state laws.

111.    Defendant's false, misleading, and deceptive advertising and representations of fact were and are directed at consumers.

112.    Defendant's false, misleading, and deceptive advertising and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

113.    Defendant's false, misleading, and deceptive advertising and representations of fact have resulted in consumer injury or harm to the public interest

114.    Defendant intended that Plaintiff Seljak and each of the other members of the New York Subclass would rely upon their deceptive conduct and false advertising, and a reasonable person would in fact be misled by this deceptive conduct. Defendant engaged in misleading and deceptive advertising that represented that the Products were "fit," or in other words, "healthy." Defendant chose to label the Products in this way to impact consumer choices and gain market

dominance, as it is aware that all consumers who purchased the Products were exposed to, and would be impacted by, the "fit" representation and would reasonably believe from this representation that the Products are healthy. This use of the word "fit" misleads consumers into believing the Products were healthy. However, the Products are not "healthy" as they are not healthy as defined by the FDCA and parallel state laws. Thus, Defendant's advertising and labeling that the Products were fit and healthy was an unfair, untrue, and misleading practice.

115.    Consumers, including Plaintiff Seljak and New York subclass members either would not have purchased the Products or would have paid less for them had the known that the Products are not "healthy" in violation of the FDCA and parallel state laws.

116.    As a direct and proximate result of Defendant's deceptive acts and practices, including it's use or employment of false advertising, Plaintiff Seljak and each of the other members of the New York Subclass have sustained actual damages in an amount to be proven at trial.

117.    In addition, Plaintiff Seljak and New York Subclass Members seek equitable and injunctive relief against Defendant on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

118.    On October 6, 2021, Plaintiff Seljak gave notice to Defendant of its violations of the New York General Business Law § 350 On October 21, 2021, Defendant responded to Plaintiff Seljak by letter, but did not remedy its breaches of New York General Business Law § 350.

119.    Therefore, within 30 days of receiving notice, Defendant did not take the necessary steps outlined in Plaintiff Seljak's notice letter to remedy their breach of New York General Business Law § 350 for the Products.

120.    In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

**COUNT III**
**Violation of California's Unfair Competition Law ("UCL")**
**California Business and Professions Code §17200, *et seq.***
**(On Behalf Of Plaintiff**
**Taylor And The California Subclass)**

121.    Plaintiff Taylor repeats and re-alleges the allegations above as if set forth herein.

122.    The UCL defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code § 17200.

*The "Unfair" Prong*

123.    A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

124.    Defendant's actions constitute "unfair" business practices because, as alleged above, Defendant engaged in misleading and deceptive advertising and labeling that represented that the Products were "fit," or in other words, "healthy." This use of the word "fit" misleads consumers into believing the Products are healthy. Defendant's acts and practices offend an established public policy of accurate labeling, and is immoral, unethical, oppressive, and substantially injurious to consumers.

125.    The harm to Plaintiff Taylor and the California Subclass outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests other than the misleading and deceptive conduct described herein.

*The "Fraudulent" Prong*

126.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

127.    Defendant's acts and practices alleged above constitute fraudulent business acts or practices as they have deceived Plaintiff Taylor and are highly likely to deceive members of the consuming public. Defendant chose to label the Products as "fit," or in other words "healthy." The use of the word "fit" misleads consumers into believing the Products are healthy. However, the Products are not "healthy' in violation of the FDCA and parallel state laws. Defendant intended that Plaintiff Taylor and each of the other members of the California Subclass would rely upon their deceptive conduct and false advertising, and a reasonable person would in fact be misled by this deceptive conduct.

### The "Unlawful" Prong

128.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

129.    Defendant's acts and practices alleged above constitute unlawful business acts or practices as they have violated state and federal law. Defendant's false, deceptive, and misleading label statements violate 21 U.S.C. § 343(a)(1), which states, "[a] food shall be deemed to be misbranded—If (1) its labeling is false or misleading in any particular[.]"

130.    In addition, California law expressly prohibits false advertising. *See* Cal. Bus. & Prof. Code 17500. Moreover, the Consumer Legal Remedies Act, Cal. Civ. Code § 1770(a)(9), ("CLRA") also prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised[.]"

131.    The violation of any law constitutes an "unlawful" business practice under the UCL.

132.    As detailed herein, the acts and practices alleged were intended to or did result in violations of the FTCA, the FAL, and the CLRA.

133.    Defendant's practices, as set forth above, have misled Plaintiff Taylor, the California Subclass, and the public in the past and will continue to mislead in the future. Consequently, Defendant's practices constitute an unlawful, fraudulent, and unfair business practice within the meaning of the UCL.

134.    Defendant's violation of the UCL, through its unlawful, unfair, and fraudulent business practices, are ongoing and present a continuing threat that Plaintiff Taylor and the members of the California Subclass and the public will be deceived into purchasing products based on misrepresentations and suffer economic damages to be proven at trial.

135.    Pursuant to the UCL, Plaintiff Taylor and the California Subclass are entitled to preliminary and permanent injunctive relief and order Defendant to cease this unfair competition, as well as disgorgement and restitution to Plaintiff Taylor and the California Subclass of all Defendant's revenues associated with its unfair competition, or such portion of those revenues as the Court may find equitable.

## COUNT IV
### Violation of California's Consumer Legal Remedies Act ("CLRA")
### California Civil Code §1750, *et seq.*
### (And On Behalf Of Plaintiff Taylor And The California Subclass)

136.    Plaintiff Taylor repeats and re-alleges the allegations above as if set forth herein.

137.    This cause of action is brought pursuant to the CLRA, Cal. Civ. Code § 1750, *et seq.* Plaintiff Taylor and the California Subclass are "consumers" as defined by Cal. Civ. Code § 1761(d). Defendant's sale of the Products in retail stores and online to Plaintiff Taylor and the California Subclass were "transactions" within the meaning of Cal. Civ. Code §1761(e). The Products are "goods" within the meaning of Cal. Civ. Code § 1761(a).

138.     Defendant violated and continues to violate the CLRA by engaging in at least the following practices proscribed by Cal. Civ. Code § 1770(a) in transactions with Plaintiffs Taylor and the California Subclass that were intended to result in, and did result in, the sale of the Products:

   a)   "Advertising goods or services with intent not to sell them as advertised" (Cal. Civ. Code § 1770(a)(9));

   b)   Representing that the Products "have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Cal. Civ. Code § 1770(a)(5));

   c)   Representing that the Products "are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Cal. Civ. Code § 1770(a)(7)).

139.     Defendant engaged in misleading and deceptive advertising that represented that the Products were "fit," or in other words, "healthy." Defendant chose to label the Products in this way to impact consumer choices and gain market dominance, as it is aware that all consumers who purchased the Products were exposed to, and would be impacted by, the "fit" representation and would reasonably believe from this representation that the Products are healthy. This use of the word "fit" misleads consumers into believing the Products contain low levels of total fat. However, the Products are not "healthy" in violation of the FDCA and parallel state laws. Thus, Defendant's advertising and labeling that misrepresented the Products as fit and healthy was an unfair, untrue, and misleading practice.

140.     Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised the Products to unwary consumers.

141.     Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

142.    Defendant's wrongful business practices were a direct and proximate cause of actual harm to Plaintiff Taylor and the California Subclass Members.

143.    Pursuant to the provisions of Cal. Civ. Code § 1782(a), on October 6, 2021, Plaintiff Taylor and California Subclass Members sent the required notice to Defendant regarding its unlawful conduct and violation of the CLRA. ON October 21, 2021, Defendant responded to Plaintiff Taylor's notice letter but did not remedy its breach of the CLRA.

144.    Therefore, after receiving notice regarding its unlawful conduct and violation of the CLRA, Defendant did not meet the demands enumerated in Plaintiff Taylor's notice letter within 30 days. Hence, Plaintiff Taylor now seeks to recover actual damages from Defendant pursuant to the CLRA.

145.    Pursuant to California Civil Code § 1780, Plaintiff Taylor seeks injunctive relief, reasonable attorneys' fees and costs, and any other relief that the Court deems proper on behalf of the California Subclass.

### COUNT V
### Violation of California's False Advertising Law ("FAL")
### California Business & Professions Code §17500, *et seq.*
### (On Behalf Of Plaintiff Taylor And The California Subclass)

146.    Plaintiffs repeat and re-allege the allegations above as if set forth herein.

147.    Cal. Bus. & Prof. Code § 17500 provides:

> It is unlawful for any…corporation…with intent…to dispose of…personal property…to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated…from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement…which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading…

148.    The "intent" required by Section17500 is the intent to dispose of property, and not the intent to mislead the public in the disposition of such property.

149.    Defendant engaged in misleading and deceptive advertising that represented that the Products were "fit," or in other words, "healthy." Defendant chose to label the Products in this way to impact consumer choices and gain market dominance, as it is aware that all consumers who purchased the Products were exposed to, and would be impacted by, the "fit" representation and would reasonably believe from this representation that the Products are healthy. However, the Products are not "healthy" as they contain high levels of fat in violation of the FDCA and parallel state laws. Thus, Defendant's advertising and labeling that represented misrepresented the amount of fat in the Products was an unfair, untrue, and misleading practice.

150.    As a direct and proximate result of Defendant's misleading and false advertisements, Plaintiff Taylor and the California Subclass have suffered injury in fact and have lost money. As such, Plaintiff requests that this Court order Defendant to restore this money to Plaintiffs Taylor and all members of the California Subclass, and to enjoin Defendant from continuing these unfair practices in violation of the FAL in the future. Otherwise, Plaintiff, the California Subclass, and the broader public will be irreparably harmed and/or denied an effective and complete remedy.

**COUNT VI**
**Violation Of Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA")**
**815 ILCS 505/1, *et seq.***
**(On Behalf of Plaintiff Bernardi And The Illinois Subclass)**

151.    Plaintiff Bernardi repeats and re-alleges the allegations above as if set forth herein.

152.    Plaintiff and other Class Members are persons within the context of the ICFA, 815 ILCS 505/1(c).

153.    Defendant is a person within the context of the ICFA, 815 ILCS 505/1(c).

41

154.    At all times relevant hereto, Defendant was engaged in trade or commerce as defined under the ICFA, 815 ILCS 505/1(f). 183.

155.    Plaintiff Bernardi and the proposed Class are "consumers" who purchased the Products for personal, family or household use within the meaning of the ICFA, 815 ILCS 505/1(e).

156.    The ICFA prohibits engaging in any "unfair or deceptive acts or practices … in the conduct of any trade or commerce…." ICFA, 815 ILCS 505/2.

157.    The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS § 505/2. Plaintiff Bernardi and each of the other Illinois Subclass Members reasonably relied upon Defendant's representations that their Products were "fit," or healthy.

158.    Defendant's conduct, as described herein, took place within the State of Illinois and constitute unfair or deceptive acts or practices in the course of trade and commerce, in violation of 815 ICFA 505/1, *et seq*.

159.    Defendant violated the ICFA by representing that its Products have characteristics or benefits that they do not have. 815 ILCS § 505/2; 815 ILCS § 510/2(7).

160.    Defendant advertised the Products with intent not to sell them as advertised, in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(9).

161.    Defendant engaged in fraudulent and/or deceptive conduct which creates a likelihood of confusion or of misunderstanding in violation of 815 ILCS § 505/2; 815 ILCS § 510/2(3).

162.    Defendant engaged in misleading and deceptive advertising that represented that the Products were "fit," or in other words, "healthy." Defendant chose to label the Products in this way to impact consumer choices and gain market dominance, as it is aware that all consumers who purchased the Products were exposed to and would be impacted by the "fit" representation and would reasonably believe from this representation that the Products are healthy. However, the Products are not "healthy" as they contain high levels of fat in violation of the FDCA and parallel state laws.

163.    Defendant intended that Plaintiff Bernardi and each of the other Illinois Subclass Members would reasonably rely upon the misrepresentations, misleading characterizations, warranties and material omissions concerning the true nature of the Products.

164.    Defendant's misrepresentations, concealment, omissions and other deceptive conduct were likely to deceive and cause misunderstanding and/or in fact caused Plaintiff Bernardi and each of the other Illinois Subclass Members to be deceived about the true nature of the Products.

165.    Plaintiff Bernardi and Class Members have been damaged as a proximate result of Defendant's violations of the ICFA and have suffered damages as a direct and proximate result of purchasing the Products.

166.    As a direct and proximate result of Defendant's violations of the ICFA, as set forth above, Plaintiff Bernardi and the Illinois Subclass Members have suffered ascertainable loss of money caused by Defendant's misrepresentations.

167.    Had they been aware of the true nature of the Products, Plaintiff and Class Members either would have paid less for the Product or would not have purchased it at all.

168.    On October 6, 2021, Plaintiff Bernardi gave notice to Defendant of its violations of the ICFA. On October 21, 2021, Defendant responded to Plaintiff Bernardi by letter, but did not remedy its breaches of ICFA.

169.    Therefore, within 30 days of receiving notice, Defendant did not take the necessary steps outlined in Plaintiff Bernardi's notice letter to remedy their breach of the ICFA for the Products.

170.    Plaintiff Bernardi and the Illinois Subclass Members are therefore entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs and attorney's fees, under sections 815 ILCS 505/10a of the ICFA. Plaintiff and Class Members are also entitled to injunctive relief, seeking an order enjoining Defendant's unfair and/or deceptive acts or practices.

**COUNT VII**
**Breach of Express Warranty**
**(On Behalf of the National Class and,**
**alternatively, the New York, California, and Illinois Subclasses)**

171.    Plaintiffs repeat and re-allege the allegations above as if set forth herein.

172.    Plaintiffs, and each member of the National Class, formed a contract with Defendant at the time Plaintiffs and each member of the National Class purchased the Products.

173.    The terms of the contract include the promises and affirmations of fact made by Defendant on the Products' packaging and through marketing and advertising, as described above.

174.    This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiffs and the members of the National Class and Defendant.

175.    Defendant purports, through its "fit" claims made in connection with its advertising, labeling, marketing, and packaging, to create an express warranty that the Products were healhy ad defined by the FDCA and parallel state statutes.

44

176.    Plaintiffs and the members of the National Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

177.    Defendant breached express warranties about the Products and their qualities because Defendant's Products' names, "FITCRUNCH" and "FITBAR," were misleading, as set forth above, and the Products do not conform to Defendant's affirmations and promises described above.

178.    Plaintiffs and each of the members of the National Class would not have purchased the Products had they known the true nature of the Products' nutritional value.

179.    On October 6, 2021, Plaintiffs gave notice to Defendant of its breach of express warranties. On October 21, 2021, Defendant responded to Plaintiffs by letter, but did not remedy its breaches of express warranties.

180.    Therefore, within 30 days of receiving notice, Defendant did not take the necessary steps outlined in Plaintiffs' notice letter to remedy their breach of express warranties for the Products.

181.    As a result of Defendant's breach of warranty, Plaintiffs and each of the members of the National Class have been damaged in the amount of the purchase price of the Products and any consequential damages resulting from their purchases.

**COUNT VIII**
**Unjust Enrichment**
**(In The Alternative To Count I And On Behalf of the National Class and, alternatively, the New York, California, and Illinois Subclasses)**

182.    Plaintiffs repeat and re-allege the allegations above as if set forth herein.

183.    Plaintiffs and Class members conferred tangible and material economic benefits upon Defendant by purchasing Defendant's Products. Plaintiffs and Class members would not

have purchased the Products had they not relied upon Defendant's deceptive conduct and false advertising of the Products as "fit."

184.    Defendant has been unjustly enriched in retaining the revenues derived from the purchase of the Products by Plaintiffs and the other members of the National Class.

185.    Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Products was misleading to consumers, which caused injuries to Plaintiffs and the other members of the National Class because they would have not purchased the Products if Defendant had not mislead them into believing the FITCRUNCH and FITBAR products were "fit," or healthy.

186.    Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiffs and the other members of the National Class is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the other members of the National Class for their unjust enrichment, as ordered by the Court.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class Members, pray for judgment and relief against Defendant as follows:

a)  For an order declaring: (i) this is a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed Classes described herein; and (ii) appointing Plaintiffs to serve as representatives for the Classes and Plaintiffs' counsel to serve as Class Counsel;

b)  For an order enjoining Defendant from continuing to engage in the unlawful conduct set forth herein;

c)  For an order awarding restitution of the monies Defendant wrongfully acquired by its illegal and deceptive conduct;

d)  For an order requiring disgorgement of the monies Defendant wrongfully acquired by its illegal and deceptive conduct;

e) For compensatory and punitive damages, including actual and statutory damages, arising from Defendant's wrongful conduct and illegal conduct;

f) For an award of reasonable attorneys' fees and costs and expenses incurred in the course of prosecuting this action; and

g) For such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

Dated: November 18, 2021     Respectfully submitted,

            */s/Mitchell Breit*
            Mitchell Breit
            Blake Hunter Yagman*
            *mbreit@milberg.com*
            *byagman@milberg.com*
            **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
            405 East 50th Street
            New York, New York 10022
            Tel.: (212) 594-5300

            Nick Suciu III*
            *nsuciu@milberg.com*
            **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
            6905 Telegraph Rd., Suite 115
            Bloomfield Hills, MI 48301
            Tel.: (313) 303-3472

            Rachel Soffin*
            J. Hunter Bryson*
            Virginia Ann Whitener*
            *rsoffin@milberg.com*
            *hbryson@milberg.com*
            *gwhitener@milberg.com*
            **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
            800 S. Gay Street, Suite 1100
            Knoxville, TN 37929
            Tel.: (865) 247-0080
            Fax: (865) 522-0049