UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
— — — — — — — — — — — — — — — — — — — — — — — — — — — —    X

CADE SELJAK, JACOB BERNARDI and NANCY
TAYLOR, on behalf of a class of all others similarly
situated,

Case No.
21-cv-09561-NRB

          Plaintiffs,

   -against-

PERVINE FOODS, LLC,

          Defendant.

— — — — — — — — — — — — — — — — — — — — — — — — — — — —    X

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

R᷉F
RUSKINMOSCOUFALTISCHEK P.C.

*Attorney for Defendant*

1425 RXR Plaza
East Tower, 15th Floor
Uniondale, New York 11556
(516) 663-6600

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................iii

PRELIMINARY STATEMENT ..........................................................................1

BACKGROUND FACTS .....................................................................................2

    A.    The Product.....................................................................................2

    B.    Plaintiffs.........................................................................................3

    C.    The Claims .....................................................................................3

STANDARD OF REVIEW ..................................................................................4

ARGUMENT ......................................................................................................5

I.    Plaintiffs' Claims are Pre-Empted by the FDCA ....................................5

II.    Plaintiffs' Claims Should be Dismissed for Failure
to Plead an Actionable Misstatement......................................................7

    a.    A Reasonable Consumer Would Not Interpret
"Fit" to Mean Healthy as Defined by the FDA .........................8

    b.    The Use of "Fit" in Fitcrunch and Fitbar is
Not Misleading..............................................................................9

    c.    Any Confusion Created by Use of the Word
"Fit" was Clarified by the Ingredient Panel ...........................11

III.    Plaintiffs Have Not Pled a Price Premium Inquiry .........................13

IV.    Plaintiffs' Claims Should be Dismissed for
Lack of Standing..................................................................................14

    a.    Plaintiffs Lack Standing to Assert Claims
for FitBar Products.....................................................................14

    b.    Plaintiffs Lack Standing to Seek Injunctive Relief................16

V.      Plaintiffs' Consumer Protection Claims Fails ................................................. 17

     a.      Plaintiff Seljak Cannot Premise His GBL
        Claims on a Purported Violation of an FDA Regulation ...................... 17

     b.      Plaintiff Taylor's Claims Premised upon CA Law
        For Equitable Restitution and Injunctive Relief
        Fail Because She Has Not Alleged an Inadequate
        Remedy of Law .......................................................................................... 17

     c.      Plaintiff Taylor's California Consumer Protection
        Claims and Plaintiff Bernardi's ICFA Claim Are
        Not Pled with Adequate Particularity ..................................................... 20

VI.     Plaintiffs' Breach of Express Warranty Claim
     Should be Dismissed ......................................................................................... 21

     a.      Plaintiffs Fail to Allege the Existence of
        an Express Warranty .............................................................................. 21

     b.      Plaintiffs Bernardi and Seljak's Express Warranty
        Claims Fail for Lack of Privity ............................................................. 23

VIII    Plaintiff's Unjust Enrichment Claim Should be Dismissed ........................... 24

CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

**CASES**                                                                   **PAGES**

*Alce v. Wise Foods, Inc.*,
No. 17 Civ. 2402 (NRB), 2018 WL 1737750 (S.D.N.Y. Mar. 27, 2018) .............. *passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................... 4

*Baldwin v. Star Sci., Inc.*,
78 F. Supp.3d 724 (N.D. Ill. 2015) ...................................................... 22, 23

*Boswell v. Bimbo Bakeries USA, Inc.*,
No. 20-CV-8923 (JMF), 2021 WL 5144552 (S.D.N.Y. Nov. 4, 2021) ................ 9, 12, 13

*Boyd v. TTI Floorcare N. Am.*,
230 F. Supp.3d 1266 (N.D. Ala. 2011),
*aff'd sub nom.*, *Green v. Bissell Homecare Inc.*,
476 Fed. App'x 238 (11th Cir. 2012) ............................................................ 23

*Bynum v. Family Dollar Store, Inc.*,
2022 WL 837089 (S.D.N.Y. Mar. 21, 2022) .................................... 8-9, 12, 13

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014) ...................................................................... 20, 21

*Change v. Fage USA Dairy Indus., Inc.*,
No. 14-CV-3826 (MKB), 2016 WL 5415678 (E.D.N.Y. Sept. 28, 2016) ...................... 16

*Chiappetta v. Kellogg Sales Co.*,
No. 21-CV-3545, 2022 WL 602505 (N.D. Ill. Mar. 1, 2022) ........................................ 8

*Cleary v. Phillip Morris Inc.*,
656 F.3d 511 (7th Cir.2011) ......................................................................... 24

*Colella v. Atkins Nutritionals, Inc.*,
348 F. Supp. 3d 120, 142 (E.D.N.Y. 2018)............................................................. 13, 14

*Conboy v. AT&T Corp.*,
241 F.3d 242 (2d Cir. 2001).......................................................................... 17

*Dashnau v. Unilever Mfg. (US), Inc.,*
529 F. Supp.3d 235 (S.D.N.Y. 2021)..................................................................9

*DiBartolo v. Abbott Labs.,*
914 F. Supp.2d 601 (S.D.N.Y. 2012).................................................................23

*DiMuro v. Clinique Lab'ys, LLC,*
572 Fed. App'x 27 (2d Cir. 2014) ......................................................................16

*Ebner v. Fresh Inc.,*
828 F.3d 958 (9th Cir. 2016) ...............................................................................8

*Elkind v. Revlon Consumer Prods. Corp.,*
No. 14-CV-2484 (JS) (AKT), 2015 WL 2344134 (E.D.N.Y. May 14, 2015)................15

*Fahey v. Whole Foods Market, Inc.,*
No. 20-cv-06737-JST, 2021 WL 2816919 (N.D. Cal. June 30, 2021)......................14

*Fink v. Time Warner Cable,*
714 F.3d 739 (2d Cir. 2013)...............................................................................10

*Franklin v. Gwinnett Cty. Pub. Sch.,*
503 U.S. 60 (1992) ..............................................................................................18

*Fuchs v. Menard, Inc.,*
No. 17-cv-01752, 2017 WL 4339821 (N.D. Ill. Sept. 29, 2017) ...............................7, 10

*Gardner v. Safeco Ins. Co. of Am.,*
No. 13-cv-091271-RS, 2014 WL 2568895 (N.D. Cal. June 6, 2014) ......................19-20

*Greenberg v. Target Corp.,*
985 F.3d 650 (9th Cir. 2021) ................................................................................6

*Harris v. McDonald's Corp.,*
No. 20-cv-06533-RS, 2021 WL 2172833 (N.D. Cal. Mar. 24, 2021)...........................14

*Housey v. Proctor & Gamble Co.,*
No. 21 Civ. 2286 (NRB), 2022 WL 874731 (S.D.N.Y. Mar. 24, 2022) ...... 13, 14, 15, 16

*Hubbard v. Gen. Motors Corp.,*
No. 95 Civ. 4362, 1996 WL 274018 (S.D.N.Y. May 22, 1996)....................................22

*Hussein v. Multi-State Lottery Ass'n,*
No. 18-cv-01848-JSW, 2018 WL 10812690 (N.D. Cal. Aug. 13, 2018) .....................24

*In re Pepsico, Inc., Bottled Water Mktg. & Sales Practices Litig.*,
588 F. Supp.2d 527 (S.D.N.Y. 2008) .................................................................. 5

*In re Zyprexa Prods. Liab. Litig.*,
549 F. Supp.2d 496 (E.D.N.Y. 2008) ................................................................ 10

*IntegrityMessageBoards.com v. Facebook, Inc.*,
No. 18-cv-05286-PJH, 2020 WL 6544411 (N.D. Cal. Nov. 6, 2020) ........................ 18

*Izguierdo v. Mondelez Int'l, Inc.*,
No. 16-cv-04697 (CM), 2016 WL 6459832 (E.D.N.Y. Oct. 26, 2016) ....................... 14

*Jessani v. Monini N. Am. Inc.*,
744 Fed. App'x 18 (2d Cir. 2018) ............................................................... 7, 8

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ................................................................ 20, 21

*Kennedy v. Mondelez Global LLC*,
No. 19-CV-302-ENV-SJB, 2020 WL 4006197 (E.D.N.Y. July 10, 2020) ................... 24

*Kommer v. Bayer Consumer Health, a div. of Bayer AG*,
710 Fed. App'x 43 (2d Cir. 2018) .................................................................. 16

*Lavie v. Procter & Gamble Co.*,
105 Cal. App. 4th 496, 129 Cal.Rptr.2d 486 (2003) ............................................ 8

*McDonnell v. First Unum Life Ins. Co.*,
No. 10 CV 8401 (RPP), 2013 WL 3975941, (S.D.N.Y. Aug. 5, 2013) ....................... 10

*McKinnis v. Kellogg USA*,
No. CV 07-2611 ABC(RCx), 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) ...... 7, 23, 24

*Melendez v. ONE Brands, LLC*,
No. 18-CV-06650 (CBA)(SJB), 2020 WL 1283793
(E.D.N.Y.  Mar. 16, 2020) ................................................................... *passim*

*Mullins v. Premier Nutrition Corp.*,
No. 13-cv-1271-RS, 2018 WL 510139 (N.D. Cal. Jan. 23, 2018).
*aff'd sub nom., Sonner v. Premier Nutrition Corp.*,
962 F.3d 1072 (9th Cir. 2020) ...................................................................... 19

*Myers-Taylor v. Ornua Foods N. Am., Inc.*,
No. 18-cv-01538-H-MMD, 2019 WL 424703 (S.D. Cal. Feb. 4, 2019) ....................... 22

*Nelson v. MillerCoors, LLC,*
246 F. Supp.3d 666 (E.D.N.Y. 2017)................................................................ 10, 22, 24

*Nicosia v. Amazon.com, Inc.,*
834 F.3d 220 (2d Cir. 2016),
*aff'd,* 815 Fed. App'x 612 (2d Cir. 2020) ...................................................... 16

*N. Am. Olive Oil Ass'n v. Kangadis Food Inc.,*
962 F. Supp.2d 514 (S.D.N.Y. 2013) .............................................................. 9

*PDK Labs, Inc. v. Friedlander,*
103 F.3d 1105 (2d Cir. 1997).......................................................................... 17

*Philips v. Ford Motor Co.,*
726 Fed. App'x 608 (9th Cir. 2018) ............................................................... 19

*Prudential Home Mortg. Co., Inc. v. Superior Ct.,*
66 Cal. App. 4th 1236 (1998) ......................................................................... 18

*Rhynes v. Stryker Corp.,*
No. 10-5619 SC, 2011 WL 2149095 (N.D. Cal. May 31, 2011) ............................ 18, 19

*Silva v. Smucker Natural Foods, Inc.,*
No. 14-CV-6154 (JG)(RML), 2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) ..... 2, 22, 24

*Sonner v. Premier Nutrition Corp.,*
971 F.3d 834 (9th Cir. 2020) .......................................................................... 18

*Smith v. LG Elecs. U.S.A., Inc.,*
2014 WL 989742 (N.D. Cal. March 11, 2014) .............................................. 22

*Stoltz v. Fage Dairy Processing Ind., S.A.,*
14-CV-3826 (MKB), 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015)............................ 24

*Szajna v. Gen. Motors Corp.,*
115 Ill. 2d 294, 320, 503 N.E.2d 760 (1986) ................................................. 23

*Verzani v. Costco Wholesale Corp.,*
2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010),
*aff'd,* 432 Fed. App'x 29 (2d Cir. 2011) ........................................................ 17

*Waldman v. New Chapter, Inc.,*
714 F. Supp.2d 398 (E.D.N.Y.2010)................................................................ 2

*Zapata Fonseca v. Goya Foods Inc.*,
No. 16-CV-02559-LHK, 2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) .................. 18, 19

## STATUTES AND OTHER AUTHORITIES

21 U.S.C. § 343 ........................................................................................................ 5

21 U.S.C. § 343-1(a)(5) ..................................................................................... 5, 6, 7

21 C.F.R. 101.65(d)(2) ............................................................................................. 6

Cal. Com. Code § 2313(1)(a) ................................................................................. 22

New York General Bus. Law § 349 .......................................................................... 1

New York General Bus. Law § 350 .......................................................................... 1

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 4

Defendant Pervine Foods, LLC ("Pervine") submits this memorandum of law in support of its motion to dismiss the Complaint, dated November 18, 2021.

## PRELIMINARY STATEMENT

Pervine sells high protein, great tasting snack products including FitCrunch whey protein bars ("Fitcrunch") and FitBar energy bars ("Fitbar", collectively the "Products"). Plaintiffs repeatedly admit that Pervine advertises the Products as being high protein and further admit that they purchased the FitCrunch bars for exactly that reason. Nevertheless, Plaintiffs claim that use of the term "fit" in the Products' tradename made them believe that the Products were "healthy" as defined by the Federal Food, Drug and Cosmetic Act ("FDCA") and, since the Products did not satisfy the FDA's definition of "healthy," Plaintiffs claim the Products are misleading.

Premised solely upon this perceived regulatory violation, Plaintiffs assert: (1) violations of Sections 349 and 350 of the New York General Business Law ("GBL"); (2) violations of California's Unfair Competition Law ("UCL"), Consumer Legal Remedies Act ("CLRA"), and False Advertising Law ("FAL"); (3) violations of the Illinois' Consumer Fraud and Deceptive Trade Practices Act ("ICFA""); (4) breach of express warranty and (5) unjust enrichment.

In its pre-motion letter to the Court seeking permission to move to dismiss the Complaint, Pervine outlined numerous pleading deficiencies. Despite the Court providing Plaintiffs the opportunity to amend their Complaint and reminding Plaintiffs of their Rule 11 obligations, Plaintiffs chose not to amend. The Complaint should therefore be dismissed, in its entirety and with prejudice.

1

## BACKGROUND FACTS[1]

A.   **The Product**

Pervine is a Pennsylvania limited liability company which produces and sells protein snack products throughout the United States, including the FITCRUNCH Whey Protein Baked Bar Products ("FitCrunch") and FITBAR Energy Bar Products ("FitBar" and together with "FitCrunch", the "Products"). Compl. ¶¶17, 22. The Products are marketed as "high protein, low sugar products." *Id.* That is exactly what the Products are.

Each FitCrunch bar package states that it is a "Whey *Protein* Baked Bar" that has a "baked soft *cookie* center." Exhibit 1 to the Brown Decl. (emphasis added).[2] FitCrunch comes in a variety of flavors such as: Chocolate Peanut Butter, Milk & Cookies, Apple Pie, Peanut Butter and Jelly, Chocolate Chip Cookie Dough, Mint Chocolate Chip, Lemon Cake, Caramel Peanut and Peanut Butter. Compl. ¶¶40-50. Each package includes a picture of a cross-section of the bar and pictures of the bar's main flavoring, including for example: cookies, peanut butter, jelly, cookie dough, mint chip ice cream and peanuts. Exhibit 1 to the Brown Decl.

---

[1] This background section assumes the well-pled allegations contained in the Complaint are true only for purposes of this motion, unless they are contradicted by other allegations, documents referenced in the Complaint, or other judicially noticeable facts.

[2] These statements are made on the FitCrunch label. Given that the Complaint repeatedly refers to the Product label (Compl. ¶¶ 3-5, 28, 92-96, 114, 173, 175), but does not attach a clear and clean copy of the packaging, the Court may take judicial notice of the Product packaging annexed to the Declaration of Michael D. Brown filed simultaneously herewith ("Brown Decl.") as Exhibits 1-3. *See Silva v. Smucker Natural Foods, Inc.*, No. 14-CV-6154 (JG) (RML), 2015 WL 5360022, at *1 (E.D.N.Y. Sept. 14, 2015) (taking judicial notice of food packaging referenced in the complaint); *Waldman v.. New Chapter, Inc.*, 714 F. Supp.2d 398, 400 n. 1 (E.D.N.Y.2010) (holding "the Court may take judicial notice of the actual [food] package, even on a motion to dismiss" because the complaint "makes numerous references to this package").

FitBar, on the other hand, is marketed as an "energy bar" that comes in two flavors: Peanut Butter Chocolate and Cranberry Vanilla Almond. Compl. ¶¶51-52. Each bar's label states that the bar has 12 grams of "plant-based *protein.*" Exhibit 3 to the Brown Decl. (emphasis added). Plaintiffs admit that FitBar's advertising shows several pictures of people exercising. Compl. ¶¶ 18, 24.

B. **Plaintiffs**

Plaintiff Cade Seljak is a New York resident (Compl. ¶6) and alleges he purchased the Peanut Butter flavored FitCrunch bars in 2021 from Amazon.com. Compl. ¶ 60. He claims to have purchased the bars because of the "protein to help with muscle gain, and because he believed they were healthy." Compl. ¶ 61. Plaintiff Jacob Bernardi is an Illinois resident (Compl. ¶7) and alleges he purchased an unspecified flavor of FitCrunch on two occasions in 2021. Compl. ¶ 65. He too claims to have purchased the product "for the protein, and because he believed they were healthy." Compl. ¶ 66. Plaintiff Nancy Taylor is a California resident (Compl. ¶8) and alleges that she purchased the Caramel Peanut and Chocolate Peanut Butter flavored Fitcrunch protein bars in July 2021 believing the bars would be a "healthy option." Compl. ¶¶70-71. None of the Plaintiffs allege what they reviewed before making their Fitcrunch purchases nor what they relied upon to reach these understandings. *See generally id.*

C. **The Claims**

Plaintiffs filed their Complaint on November 18, 2021. Compl. [Dkt. No. 1]. On February 4, 2022, Pervine sought a pre-motion conference for permission to move to dismiss the Complaint. Dkt. No. 11. On February 15, 2022, this Court

"determined that defendant may bring its motion without the necessity of a pre-motion conference." Dkt. No. 16.  Plaintiffs were encouraged "to file an amended complaint" before briefing on the upcoming motion "in the best interest of both the parties and the Court."  *Id.*  Plaintiffs chose not to amend and this briefing followed.

## STANDARD OF REVIEW

In deciding Rule 12(b)(6) motions to dismiss, courts apply a "plausibility standard," which is guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, although the Court must accept a complaint's well-pled allegations as true, this "tenet" is "inapplicable to legal conclusions"; thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.; Alce v. Wise Foods, Inc.*, No. 17 Civ. 2402 (NRB), 2018 WL 1737750, at *4 (S.D.N.Y. Mar. 27, 2018) (Buchwald, J.) ("[C]onclusory allegations [are] insufficient to state a claim.") *Second*, only complaints that state a "plausible claim for relief" may survive a motion to dismiss. *Ashcroft*, 556 U.S. at 679.

## ARGUMENT

### I.  **Plaintiffs' Claims are Pre-Empted by the FDCA**

Plaintiffs' claims are pre-empted by the Nutrition Labeling and Education Act, 21 U.S.C. §343 *et seq.* ("NLEA").[3]   The NLEA pre-empts "any requirement respecting any claim of the type described in section 343(r)(l) of this title, made in the label or labeling of food that is not *identical* to the requirement of section 343(r)." 21 U.S.C. § 343–l(a)(5) (emphasis added); *see Alce,* 2018 WL 1737750, at *4 ("[S]tate laws that seek to impose labeling requirements *identical* to those required by federal regulations are not preempted." (emphasis added)); *In re Pepsico, Inc., Bottled Water Mktg. & Sales Practices Litig.,* 588 F. Supp.2d 527, 537 (S.D.N.Y. 2008) (finding state causes of action preempted because they sought to "impose requirements in addition, and not identical, to federal requirements").   Thus, "State laws that impose affirmatively different labeling requirements from federal law … are preempted."  *Alce,* 2018 WL 1737750, at *4 (internal quotation marks omitted). That is the case here and requires dismissal of all Plaintiffs' claims.

For example, in *Melendez v. ONE Brands, LLC,* the plaintiff argued that the product's "brand name 'ONE'" was misleading because it was "an implied nutrient-content claim, understood by consumers to indicate that the bars [we]re low in sugar."  No. 18-CV-06650 (CBA)(SJB), 2020 WL 1283793, at *5 (E.D.N.Y. Mar. 16, 2020).  The Court held that the plaintiff's theory was pre-empted because "the FDA

---

[3] The NLEA amended the FDCA "to clarify and to strengthen the [FDA's] legal authority to require nutrition labeling on food, and to establish the circumstances under which claims may be made about nutrients in foods."  *Alce,* 2018 WL 1737750, at *3 (quotations omitted).

has not enacted regulations governing the approval process of brand names that incorporate _expressed_ nutrient-content statements." _Id._ at *6. As such, the Court dismissed plaintiff's claim because it "would impose state-law requirements that are not imposed by federal law." _Id._

So too here. Plaintiffs' Complaint hinges on the contention that the Products' labels are misleading because each tradename includes the word "fit," which they allege is synonymous with "healthy" as defined by the FDA, but the Products' contents cannot support the use of the phrase healthy. _See_ Compl. ¶¶37-39, 93, 96, 114, 124, 127, 139, 149, 157, 162. However, the FDA does not regulate the use of the word "fit," only healthy. _See_ 21 C.F.R. 101.65(d)(2) (defining healthy as an implied nutrient claim).

Plaintiffs make conclusory allegations that "fit" means "healthy" and on that basis alone, the Products should meet the nutritional requirements for the use of the term "healthy" as defined by the FDCA. _See_ 21 C.F.R. 101.65(d)(2). The FDCA says nothing about its application to supposed synonyms. In fact, in enacting the NLEA which amended the FDCA, Congress required that all labeling requirements not "identical" to the FDCA be pre-empted. _See_ 21 U.S.C. § 343-1(a)(5). The purpose of this is to avoid a patchwork of conflicting state labeling laws, which would impede interstate commerce. _Greenberg v. Target Corp._, 985 F.3d 650, 655 (9th Cir. 2021) ("To avoid a patchwork quilt of conflicting state labeling laws, the FDCA includes a preemption provision that establishes a national and uniform standard for certain labeling statements.") Thus, in carefully choosing the word "identical", Congress did not expand the freedom of the states to enact broader bans

6

restricting the use of "synonyms" or "like kind" requirements. 21 U.S.C. §343-1(a)(5).[4]

Thus, Plaintiffs seek to impose different labeling requirements than federal law and their claims are pre-empted.

## II. Plaintiffs' Claims Should be Dismissed for Failure to Plead an Actionable Misstatement

Even if Plaintiffs' claims were not pre-empted (and they are), Plaintiffs' claims fail — including their consumer protection claims under New York, California and Illinois law — because Pervine has not made a misstatement.  To adequately plead these claims, Plaintiffs must demonstrate that the supposed deceptive statement is likely to mislead a reasonable consumer acting reasonably under the circumstances.  *See e.g., Jessani v. Monini N. Am. Inc.,* 744 Fed. App'x 18, 19 (2d Cir. 2018); *McKinnis v. Kellogg USA*, No. CV 07-2611 ABC(RCx), 2007 WL 4766060, at *3 (C.D. Cal. Sept. 19, 2007) ("In order to state a claim under the UCL, FAL, or CLRA, Plaintiffs must allege that statements or other representations appearing on Defendant's product labels are likely to deceive a reasonable consumer."); *Fuchs v. Menard, Inc.*, No. 17-cv-01752, 2017 WL 4339821, at *3 (N.D. Ill. Sept. 29, 2017) (dismissing ICFA claim; the alleged deceptive statement would not mislead a "reasonable consumer").

---

[4] In the Complaint, Plaintiffs rely solely on FTC guidance to argue that FDA regulations should apply to synonyms of "healthy".  Compl. ¶35.  It simply is not the FTC's role or right to impact the NLEA's pre-emption of state and local government authority which are not identical to the FDA. The FTC's guidance is of no moment in how this Court applies the scope of pre-emption.

"[I]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement [or label] would not have misled a reasonable consumer." *Jessani,* 744 Fed. App'x at 19.  "Plaintiffs must plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* citing *Ebner v. Fresh Inc.,* 828 F.3d 958, 965 (9th Cir. 2016)*; Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508, 129 Cal.Rptr.2d 486 (2003) (same); *Chiappetta v. Kellogg Sales Co.*, No. 21-CV-3545, 2022 WL 602505, at *3 (N.D. Ill. Mar. 1, 2022) (same).

Plaintiffs have not pled a misstatement here because: (a) they have not plausibly alleged that reasonable consumers would interpret the word "fit" in the way that the FDA has defined healthy; (b) regardless, the term "fit" in the context of the Products' entire label is not misleading as a matter of law; and (c) at most, "fit" is ambiguous, not misleading, and any confusion was clarified by the ingredient panel.

### a. A Reasonable Consumer Would Not Interpret "Fit" to Mean Healthy as Defined by the FDA

No reasonable consumer would understand the reference to "fit" in the Products' name to mean "healthy" as defined by the FDCA. *See* Compl. ¶¶34-36. Plaintiffs have not alleged that a reasonable consumer would have detailed knowledge of the FDA labeling regulations (let alone Federal Trade Commission guidance regarding them (Compl. ¶ 34 n.15) and necessarily interpret them as the plaintiffs have here. *Id.* ¶¶34-36.  For example, in *Bynum v. Family Dollar Store, Inc.,* the plaintiff "point[ed] to a range of federal labeling regulations as evidence of

what consumers should expect different types of labels to imply about the contents of their products." No. 20-cv-06878 (MKV), 2022 WL 837089, at *5 (S.D.N.Y. Mar. 21, 2022). The Court dismissed the claims for failure to plead a misstatement because "even if Plaintiff is correct about federal regulatory requirements, the [Complaint] does not allege that reasonable consumers are aware of these complex regulations, *much less that they incorporate the regulations into their day-to-day marketplace expectations.*" *Id.* (emphasis added) (citing *Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp.3d 235, 240 (S.D.N.Y. 2021)). Similarly, in *N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, the Court similarly concluded that the plaintiffs had not demonstrated that "the perceptions of ordinary consumers align with [the] labeling standards." 962 F. Supp.2d 514, 519 (S.D.N.Y. 2013).

The same result applies here. Plaintiffs allege only that the term "fit" is misleading because the Products do not satisfy the FDA's regulatory requirements for the term "healthy." *See* Compl. ¶¶ 63, 68, 73. The Complaint does not plausibly allege that reasonable consumers are aware of these complex regulations and interpret the phrase "fit" in that way. *See generally* Compl. Thus, the claims fail.

b. **The Use of "Fit" in Fitcrunch and Fitbar is Not Misleading**

Plaintiffs' claims fail because the use of "fit" in the Products' tradenames is not misleading. "[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Boswell v. Bimbo Bakeries USA, Inc.*, No. 20-CV-8923 (JMF), 2021 WL 5144552, at *2 (S.D.N.Y. Nov. 4, 2021) (citation omitted). A court must "consider representations in their 'surrounding context based on the content of the entire label'" because "the idea that consumers

9

purchase products based on certain of a label's statements or images . . . but are blind to others . . . in close proximity on the label strains credibility." *Nelson v. MillerCoors, LLC,* 246 F. Supp.3d 666, 674 n.4 (E.D.N.Y. 2017); *see also Fuchs v. Menard, Inc., supra,* 2017 WL 4339821, at *3 (determining whether a statement is deceptive it must be understood in light of "all the information available to plaintiffs."). "[A] disclaimer or similar clarifying language may defeat a claim of deception." *Fink v. Time Warner Cable,* 714 F.3d 739, 742 (2d Cir. 2013).

With respect to FitCrunch, the name of the bar is in close proximity to the phrase "whey *protein* bar" and the box for the FitCrunch bars shows a picture of a muscular man and describes them as "high *protein* snack bars." Compl. ¶3; Exhibits 1 and 2 to the Brown Decl. (emphasis added). Protein is known by the general public to promote muscle gain. *See, e.g.,* National Institutes of Health, *Office of Dietary Supplements* ("Protein helps to build, maintain, and repair your muscles.").[5] Thus, "fit," as used in the context of this label, means muscular, trim, or "toned," having firm and well-defined muscles. A person with a muscular body is generally thought of as being "fit". Plaintiffs even admit that they were aware protein helped build muscles and that they purchased the Product to "help with muscle gain." Compl. ¶¶ 61; 66 ("purchased the Product for the protein"). Thus,

---

[5] https://ods.od.nih.gov/factsheets/ExerciseAndAthleticPerformance-Consumer/. The Court may consider information from government agencies, including the National Institutes of Health, in evaluating Plaintiffs' Complaint as matters of public record. *See, e.g., In re Zyprexa Prods. Liab. Litig.,* 549 F. Supp. 2d 496, 501 (E.D.N.Y. 2008) (judicial notice can be taken of "[p]ublic documents issued by government agencies"); *McDonnell v. First Unum Life Ins. Co.,* No. 10 CV 8140 (RPP), 2013 WL 3975941, at *16 n.33 (S.D.N.Y. Aug. 5, 2013) (taking judicial notice of information on a Centers for Disease Control website).

Plaintiffs got exactly what was advertised; they purchased the Product for its protein and received a Product with protein.

Plaintiffs' conclusory allegation that the Fitcrunch bars were misleading because they were not healthy is also belied by other parts of the label.  First, Plaintiffs themselves admit that the Fitcrunch Bars are flavored after treats, such as "cookie dough," "apple pie," "lemon cake," "mint chocolate chip," "peanut butter chocolate," "peanut butter and jelly" and "milk and cookies," and are described as having a "soft cookie center" *Id.* ¶1; Exhibit 1 to the Brown Decl.  Similarly, the face of the label depicts the corresponding treat flavor in close proximity to the name Fitcrunch.  *See* Compl. ¶¶3, 18; *see also* Exhibit 1 to the Brown Decl.  Thus, Plaintiff Taylor's statement she bought Fitcrunch to "help" her "lose weight," is implausible because no reasonable consumer would consider the Products' label for the "Caramel Peanut" and "Chocolate Peanut Butter" to mean "healthy" as defined by the FDCA. *See* Compl. ¶72.

Plaintiffs' claims against Fitbar similarly fail.  They admit that FitBar products are advertised as "energy" bars with "high protein" (Compl. ¶22) and their advertisements show several pictures of people exercising.  *Id.* ¶¶18, 24.  While the label for the Fitbar is markedly different, "fit" in this context also means muscular, trim, or toned.

### c.  Any Confusion Created by Use of the Word "Fit" Was Clarified by the Ingredient Panel

Even if a consumer could be confused by the use of the word "fit" (and they could not), the label would be, at most, ambiguous and that ambiguity was clarified

by the Products' ingredient panel.  "If a plaintiff alleges that an element of a product's label is misleading, but another portion of the label would dispel the confusion," the Court should inquire as to whether the allegedly misleading element is instead merely ambiguous." *Bynum*, 2022 WL 837089, at *3.  If the statement is ambiguous, "clarification can defeat the claim." *Melendez*, 2020 WL 1283793, at *6.

In *Boswell v. Bimbo Bakeries USA, Inc.,* the Court found that the description "All Butter" which appeared on the label of an Entenmann cake was not misleading, but ambiguous.  The Court concluded that "reasonable consumers would need additional information to understand the meaning of 'All Butter' and 'would know exactly where to look to investigate – the ingredient list'." 2021 WL 5144552, at *3. Similarly, in *Bynum v. Family Dollar Stores, Inc.*, the Court held that the Defendant's product labeled "Smoked Almonds" was ambiguous as to whether the product was referring to a flavor or actually smoked.  2022 WL 837089, at *4.  Since the label was ambiguous, "a reasonable consumer would read the ingredients list in order to clarify his or her understanding of the label." *Id.*  Since the ingredients list on the back of the packaging made clear the nuts were flavored with smoke, it dispelled any possibility that a reasonable consumer would be misled.  *Id.; see also Melendez*, 2020 WL 1283793, at *7 (dismissing claims because "any potential ambiguity created by the front label regarding the bars' carbohydrate and caloric contents is readily clarified by the back panel of the bars' packaging").

Here, as in *Boswell*, *Bynum* and *Melendez*, the term is, at worst, ambiguous. For example, Plaintiffs cite to Merriam Webster's purported definition of "fit" as "healthy."  Compl. ¶ 34 n.14.  But the dictionary page they cite demonstrates that

the definition of fit depends on its context (whether it is used as a verb, or noun, for example) and provides multiple definitions for each use. *Id.* Thus, a reasonable consumer questioning whether fit meant healthy in this context would have been able to easily clarify the nutritional content of the Products through the ingredient label – especially when the Products depicted pictures of treats. Compl. ¶¶40-50, Exhibit 1 to the Brown Decl.

In summary, Plaintiffs have failed to adequately plead a misstatement and their Complaint must be dismissed.

III. **Plaintiffs Have Not Pled a Price Premium Injury.**

The claims Plaintiffs assert, other than unjust enrichment, must also be dismissed because Plaintiffs have not adequately pled that they were injured. For example, under the GBL, a plaintiff must allege an "injury as [a] result of the deceptive act." *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp.3d 120, 142 (E.D.N.Y. 2018). "A well pleaded allegation that a plaintiff paid a premium may be sufficient to allege injury." *Id.* at 143.

For example, in *Housey v. Proctor & Gamble Co.*, this Court dismissed a putative consumer class action for failure to plead a price premium injury. No. 21 Civ. 2286 (NRB), 2022 WL 874731, at *8 (S.D.N.Y. Mar. 24, 2022) (Buchwald, J.). There, the plaintiff challenged the advertising on several Crest toothpastes, asserting claims for warranty and violations of various states consumer protection statutes, including New York. *Id.* at *2. To allege a price premium, the plaintiff "compare[d] the Charcoal Toothpastes to another Crest product." *Id.* at *8. The Court held that she improperly compared the product "to a completely different

product in order to manufacture a price premium." *Id.* Thus, the plaintiff had not

demonstrated an injury and her claims were dismissed. *Id.* at \*9; *see also Colella*,

348 F. Supp. 3d at 143 (dismissing claims because plaintiff "provide[d] no facts

regarding what the premium was"); *Izguierdo v. Mendelez Int'l, Inc.*, No. 16-cv-

04697 (CM), 2016 WL 6459832, at \*7 (E.D.N.Y Oct. 26, 2016) (dismissing claims);

*Fahey v. Whole Foods Market, Inc.,* No. 20-cv-06737-JST, 2021 WL 2816919, at \*3

(N.D. Cal. June 30, 2021) (dismissing claims; complaint "d[id] not allege how

comparable products are priced or why else a reasonable consumer would find the

Product's cost to include a 'premium'"); *Harris v. McDonald's Corp.*, No. 20-cv-

06533-RS, 2021 WL 2172833, at \*2 (N.D. Cal. Mar. 24, 2021) (dismissing claims

because plaintiff "ha[d] not pleaded sufficient facts to support a plausible economic

injury").

The same result should follow here because Plaintiffs *do not even attempt* to

compare the Products to allege a price premium. *See generally* Compl. Instead,

they assert in an entirely conclusory manner that they "either would not have

purchased the Products or would have paid less for them." *Id.* ¶ 115. This fails.

IV. **Plaintiffs' Claims Should be Dismissed for Lack of Standing**

a. **Plaintiffs Lack Standing to Assert Claims for FitBar Products**

Plaintiffs do not have standing to assert claims related to the FitBar product

line, which none of them purchased. *See* Compl. ¶¶60, 65, 70. Plaintiffs can only

assert claims for products they did not purchase if there is sufficient identity

between the claims. *See Housey*, 2022 WL 874731, at \*9 (Buchwald, J.). For

example, in *Housey*, the plaintiff brought claims for "three different products, which

all ma[d]e different representations." *Id.*  Plaintiff did not purchase all of the
products.  *Id.*  This Court dismissed the claims for the non-purchased toothpastes
because "[w]here products have 'different ingredients' and the producer 'made
different advertising claims for each product,' the Second Circuit has dismissed
claims." *Id.*; *see also Elkind v. Revlon Consumer Prods. Corp.*, No. 14-CV-2484 (JS)
(AKT), 2015 WL 2344134, at *3 (E.D.N.Y. May 14, 2015) (dismissing claims related
to powder when the plaintiff purchased only the foundation and concealer).

So too here.  The marketing of FitCrunch and FitBar products is not
sufficiently similar.  The Fitcrunch bars are marketed as "protein" bars and the
Fitbars are marketed as "energy" bars. *Compare* Compl. ¶ 18 *with* 24.  As such, the
labels for the products are markedly different.  FitCrunch bars are marketed as
"Whey Protein Baked Bars" with a "soft cookie center."  Exhibit 1 to the Brown
Decl.  FitBars, on the other hand, are marketed as having "Plant Based Protein"
and marketed, among other things, as "Non GMO," and "Vegan."  Exhibit 3 to the
Brown Decl.  The bars also have different ingredients.  Whereas FitCrunch lists
whey protein blend and soy protein among its primary ingredients, FitBar has
neither of those ingredients and lists organic brown rice syrup and hemp protein
among its primary ingredients. *Compare* Compl. ¶¶ 40-50 to Exhibit 3 to the Borwn
Decl.  "Where products have 'different ingredients' and the producer 'made different
advertising claims for each product,' the Second Circuit has dismissed claims by
purchasers of products that do not raise 'nearly identical' concerns, because
'[e]ntirely unique evidence will, therefore, be required to prove that the ... products

are false and misleading'." *Housey*, 2022 WL 874731 at *9 (Buchwald, J.) quoting *DiMuro v. Clinique Labs, LLC*, 572 Fed. App'x 27, 32 (2d Cir. 2014).

As such, Plaintiffs do not have standing to assert claims for FitBar.

### b. Plaintiffs Lack Standing to Seek Injunctive Relief

Plaintiffs do not have standing to seek injunctive relief because they have no risk of future harm. "Past injuries ... do not confer standing ... unless the plaintiff can demonstrate that []he is likely to be harmed again in the future in a similar way." *Kommer v. Bayer Consumer Health, a Div. of Bayer AG,* 710 Fed. App'x 43, 44 (2d Cir. 2018) (quoting *Nicosia v. Amazon.com, Inc.,* 834 F.3d 220, 238 (2d Cir. 2016), *aff'd*, 815 Fed. App'x 612 (2d Cir. 2020)). "[T]he requirement that a plaintiff allege a risk of future injury in order to obtain injunctive relief is a constitutional requirement that all plaintiffs must satisfy." *Change v. Fage USA Dairy Indus., Inc.,* No. 14-CV-3826 (MKB), 2016 WL 5415678, at *5 (E.D.N.Y. Sept. 28, 2016). "Consumers who were misled by deceptive food labels lack standing for injunctive relief because there is no danger that they will be misled in the future." *Alce*, 2018 WL 1737750, *6 (dismissing relief).

The same result follows here. Plaintiffs allege only that they "would not have purchased the Product" if they had known the purported truth regarding the Products' contents. Compl. ¶¶63, 68, 73. There is no risk of future injury here because they do not allege they would purchase the Products again. In any event, Plaintiffs are now aware of the alleged misleading labeling and therefore could not be misled in the future. As such, Plaintiffs do not have standing to seek injunctive relief.

## V. __Plaintiffs' Consumer Protection Claims Fail__

### a. __Plaintiff Seljak Cannot Premise His GBL Claims on a Purported Violation of an FDA Regulation__

Plaintiffs' Complaint is premised on the argument that the Products do not comply with their interpretation of the FDA regulations. *See* Compl. ¶¶28-39.  As individuals, however, Plaintiffs cannot "privately enforce alleged violations of the FDCA" because "no such private right of action exists."[6]  *PDK Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1113 (2d Cir. 1997).  In addition, because "[t]he FDCA lacks a private right of action ... [Seljak] cannot rely on it for purposes of asserting a state-law consumer claim under" the GBL.  *Verzani v. Costco Wholesale Corp.,* No. 09 Civ. 2117 (CM), 2010 WL 3911499, at *3 (S.D.N.Y. Sept. 28, 2010), *aff'd,* 432 Fed. App'x 29 (2d Cir. 2011); *see also Conboy v. A T& T Corp.,* 241 F.3d 242, 258 (2d Cir. 2001) (a plaintiff cannot "thwart legislative intent by couching" a statutory violation without a private right of action as a GBL claim).  Accordingly, Seljak's claims for GBL violations, which are wholly premised on purported violations of FDA regulations, must be dismissed.

### b. __Plaintiff Taylor's Claims Premised upon CA Law for Equitable Restitution and Injunctive Relief Fail Because She Has Not Alleged an Inadequate Remedy at Law__

Taylor's UCL, FAL and unjust enrichment claims and her CLRA claim seeking injunctive relief must be dismissed because the Complaint demonstrates that legal remedies in the form of money damages are adequate.  It is well settled

---

[6] Plaintiffs cannot enforce FDA regulations, let alone FTC interpretations of FDA regulations.  *See supra* n.4.

that a plaintiff is not entitled to pursue equitable relief if an adequate remedy at law may exist. *See Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 62 (1992) ("[I]t is axiomatic that a court should determine the adequacy of damages at law before resorting to equitable relief."); *Prudential Home Mortg. Co., Inc. v. Superior Ct.*, 66 Cal. App. 4th 1236, 1249-50 (1998) (holding statutory relief under the UCL "is subject to fundamental equitable principles, including inadequacy of the legal remedy"); *IntegrityMessageBoards.com v. Facebook, Inc.*, No. 18-cv-05286-PJH, 2020 WL 6544411, at *2-3 (N.D. Cal. Nov. 6, 2020) ("[F]ederal common law bars plaintiff from pursing equitable relief if it maintains an adequate legal remedy.").

The Ninth Circuit also reaffirmed this requirement in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020). There, the Court held that "even if a state authorizes its courts to provide equitable relief when an adequate legal remedy exists, such relief may be unavailable in federal court because equitable remedies are subject to traditional equitable principles unaffected by state law." *Id.* at 841. Such principles "apply when a party requests restitution under the UCL[, FAL] and CLRA in a diversity action." *Id.* at 844 (affirming dismissal of UCL claim with prejudice because plaintiff "seeks the same sum in equitable restitution as . . . she requested in damages" under the CLRA). Thus, a claim must be dismissed if its only remedy is equitable relief and there is an adequate remedy at law.

It is indisputable that Taylor's UCL and FAL claims are equitable in nature and provide only equitable relief. *See, e.g.*, *Zapata Fonseca v. Goya Foods Inc.*, No. 16-cv-02559-LHK, 2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016) ("'[T]he UCL and FAL provide for only equitable relief.'"); *Rhynes v. Stryker Corp.*, No. 10-5619-

18

SC, 2011 WL 2149095, at *3-4 (N.D. Cal. May 31, 2011) ("The UCL only provides equitable remedies."). Accordingly, a plaintiff is "*required* to plead the inadequacy of their legal remedies to state a claim for injunctive [and equitable] relief." *Philips v. Ford Motor Co.*, 726 Fed. App'x 608, 609 (9th Cir. 2018) (affirming dismissal of UCL and CLRA claims) (emphasis added). "Where the claims pleaded by a plaintiff *may* entitle her to an adequate remedy at law, equitable relief is unavailable." *Rhynes*, 2011 WL 2149095, at *4 (emphasis in original).

For example, in *Zapata Fonseca*, the plaintiff alleged that the manufacturer falsely advertised food products as containing octopus when, in fact, the products contained squid, and asserted claims under the UCL, FAL, and CLRA, in addition to unjust enrichment. 2016 WL 4698942, at *1. The Court dismissed the claims for equitable restitution and injunctive relief under the UCL, FAL, CLRA, and unjust enrichment because plaintiff's remaining causes of action "allow[ed] Plaintiff to recover monetary damages and thus provide Plaintiff a remedy at law." *Id.*

Here, Taylor similarly cannot dispute that the CLRA and express warranty claims "may" entitle her to monetary damages. (Compl. ¶144, Request for Relief at c through f). Her claims are also all based on the same facts – that the term "fit" is misleading. Thus, Taylor has an adequate remedy at law. *See, e.g.*, *Mullins v. Premier Nutrition Corp.*, No. 13-CV-01271-RS, 2018 WL 510139, at *2 (N.D. Cal. Jan. 23, 2018*), aff'd sub nom.*, *Sonner v. Premier Nutrition Corp.*, 962 F.3d 1072 (9th Cir. 2020) (dismissing equitable claims on the pleadings because the plaintiff may have an "adequate remedy at law under a claim for damages pursuant to the CLRA"); *Gardner v. Safeco Ins. Co. of Am.*, No. 14-cv-02024-JCS, 2014 WL 2568895,

*7-8 (N.D. Cal. June 6, 2014) (dismissing UCL claim because money damages would be available if plaintiff prevailed on his breach of contract claims).  Given that Taylor has pled claims that may provide an adequate legal remedy, her UCL, FAL and unjust enrichment claims fail as a matter of law. The CLRA claim likewise fails to the extent equitable relief is demanded. Therefore, Taylor's demands for "injunctive relief," "disgorgement and restitution" and "to enjoin Defendant from continuing these unfair practices" through their UCL, FAL and CLRA claims must be dismissed.  Compl. ¶¶135, 145, 150.

### c. Plaintiff Taylor's California Consumer Protection Claims and Plaintiff Bernardi's ICFA Claim Are Not Pled with Adequate Particularity

Claims under California's consumer protection statutes and under the ICFA must satisfy the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b).  *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (dismissing ICFA claim where plaintiff failed to satisfy the heightened pleading requirements of Rule 9(b)); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (holding that the heightened pleading requirements of Rule 9(b) apply to California consumer protection statutes).  Rule 9(b) requires a pleading to "state with particularity the circumstances constituting fraud," and generally requires a plaintiff to allege the "who, what, where, when and how of the fraud." *Camasta*, 761 F.3d at 736.

In *Camasta*, plaintiff asserted a claim under the ICFA alleging that an advertisement that stated "sale prices" for certain clothing items was misleading given that there was no temporary price reduction on the clothing purchased.  761

F.3d at 737-38.  The plaintiff relied upon his sales receipt to support that he purchased a product, but failed to allege anything about what advertisements he saw and whether he saw the claimed misleading statements before purchasing the product.  The Court dismissed his claim for failure to satisfy the heightened pleading standards of Rule 9(b).  Similarly in *Kearns*, the plaintiff failed to allege when he was exposed to the alleged misrepresentations, what misrepresentations he found material and what representations were relied on in making the decision to purchase the product.  567 F.3d at 1126.  As a result, the defendant was not provided sufficient information to respond to the allegations of misconduct.  The plaintiff's CLRA and UCL claims were dismissed for failure to satisfy Rule 9(b).

Here, neither Plaintiff alleges what representations they reviewed before their purchases or what they relied upon.  *See generally* Compl.  And, the allegations regarding Bernardi are further deficient because the Complaint fails to allege which of the FitCrunch protein bars Mr. Bernardi purchased, including the flavor and whether it was a single bar or variety of bars.  Comp. ¶¶65-69.  Thus, it is impossible to ascertain from the Complaint what representations were made on the Product Mr. Bernardi purchased.  These allegations fall far short of providing the adequate detail necessary to satisfy Rule 9(b).  The California consumer protection claims and the ICFA claim should therefore be dismissed.

## VI. Plaintiffs' Breach of Express Warranty Claim Should be Dismissed

### a.  Plaintiffs Fail to Allege the Existence of an Express Warranty

The breach of express warranty claim should also be dismissed because it fails to allege a material statement amounting to a warranty. A breach of express

warranty claim must allege a false "affirmation of fact or promise." *Nelson v. MillerCoors, LLC*, 246 F. Supp.3d at 678-79; *see also* Cal. Com. Code § 2313(1)(a); *Baldwin v. Star Sci., Inc.*, 78 F. Supp.3d 724, 739 (N.D. Ill. 2015). "[A] seller creates an express warranty by making '[a]ny affirmation of fact or promise ... to the buyer which relates to the goods and becomes part of the basis of the bargain.'" *Silva v. Smucker Nat. Foods, Inc.*, 2015 WL 5360022, at *10; *Baldwin*, 78 F. Supp.3d at 739. An express warranty must be an affirmation of fact or promise that is "specific and unequivocal." *Smith v. LG Elecs. U.S.A., Inc.*, No. 13-4361 PJH, 2014 WL 989742, at *4 (N.D. Cal. March 11, 2014). (citation omitted). "Generalized statements by the defendant, however, do not support an express warranty claim if they are 'such that a reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely.'" *Silva,* 2015 WL 5360022, at *10 (quoting *Hubbard v. Gen. Motors Corp.*, No. 95-Civ-4362, 1996 WL 274018, at *6 (S.D.N.Y. May 22, 1996)); *Myers-Taylor v. Ornua Foods N. Am., Inc.*, No. 18-CV-01538-H-MDD, 2019 WL 424703, at *6 (S.D. Cal. Feb. 4, 2019) (dismissing express warranty claim; "Plaintiff could not have reasonably relied on Defendants' representations to infer that the cows were fed only grass."); *Baldwin*, 78 F. Supp.3d at 739 ("The court concludes that Plaintiff's fuzzy, non-specific, alleged 'statements' made by [defendants about the product's] supposed benefits are too sketchy to support an express warranty claim.").

Here, Plaintiffs' express warranty claim refers generally to the "labeling, marketing and advertising" for the Products as the basis for its claim, yet only specifically relies on the term "fit" as the express warranty. For the same reason

that the use of "fit" in the Product's tradename is not misleading, it is also not a false affirmation of fact. *See supra* Part II.

Moreover, Plaintiffs claim that they relied on the term "fit" in the Products' tradename "to create an express warranty that the Products were healthy ad [sic] defined by the FDCA and parallel state statutes." Compl. ¶¶175, 177.  Plaintiffs allege "Defendant breached express warranties about the Products and their qualities because Defendant's Products' names, 'FITCRUNCH' and 'FITBAR' were misleading." Compl. ¶177.  However, a tradename is not a warranty.  "[C]ourts reject reliance upon a tradename to show the existence of an express warranty." *Boyd v. TTI Floorcare N. Am.*, 230 F. Supp.3d 1266, 1278 (N.D. Ala. 2011), *aff'd sub non.*, *Green v. Bissell Homecare Inc.*, 476 Fed. App'x 238 (11th Cir. 2021); *Szajna v. Gen. Motors Corp.*, 115 Ill. 2d 294, 320, 503 N.E.2d 760, 771 (1986), *McKinnis,* 2007 WL 4766060, at *5-6.

### b. Plaintiffs Bernardi and Seljak's Express Warranty Claims Fail for Lack of Privity

The breach of express warranty claims under New York and Illinois law also fail because Plaintiffs fail to allege that the parties have privity of contract.  Privity is "an essential element of a cause of action for express warranty." *DiBartolo v. Abbott Labs.*, 914 F. Supp.2d 601, 625 (S.D.N.Y. 2012) (Buchwald, J.) (internal citation omitted); *Baldwin*, 78 F. Supp.3d at 739 ("[B]ecause an express warranty derives from contract law, 'a party must have privity to the contract before bringing a breach of express warranty claim'.").

Here, it is undisputed that Seljak and Bernardi did not buy the Products from the defendant; they purchased the Products from third party sellers.  *See* Compl. ¶60 (Seljak purchased from Amazon.com); ¶65 (Bernardi purchased from ebay.com and a local nutrition store).  As such, Seljak and Bernardi's breach of express warranty claims fail.

VII.  **Plaintiffs' Unjust Enrichment Claim Should be Dismissed**

Plaintiffs' unjust enrichment claim must be dismissed because it is duplicative of the other causes of action.[7]  *Alce*, 2018 WL 1737750, at *11 (dismissing claim as a "mere regurgitation" of others); *see also Nelson*, 246 F. Supp. 3d at 679 (claim duplicative because it "relie[d] on the same facts as [the plaintiff's] other causes of action in tort"); *Silva*, 2015 WL 5360022, at *12 (dismissing claim as duplicative); *Stoltz v. Fage Dairy Processing Ind., S.A.*, No. 14-CV-3826 (MKB), 2015 WL 5579872, at *27 (E.D.N.Y. Sept. 22, 2015) (same); *Melendez*, 2020 WL 1283793, at *8 (same).  Similarly, under Illinois law, "[w]here a deceptive trade practices claim fails for failure to allege deception, an unjust enrichment claim fails, too." *Kennedy v. Mondelez Global LLC*, No. 19-CV-302-ENV-SJB,  2020 WL 4006197, at *15 (E.D.N.Y. July 10, 2020); *see also Cleary v. Phillip Morris Inc.,* 656 F.3d 511, 517–18 (7th Cir. 2011); *McKinnis*, 2007 WL 4766060, at *6.

Plaintiffs' unjust enrichment claim — just as all the others — is premised upon the allegation that "Defendant's labeling of the Products … mislead them into believing the FITCRUNCH and FITBAR products were 'fit,' or healthy."  Compl.

---

[7] Unjust enrichment "is not a stand-alone action under California Law."  *Hussein v. Multi-State Lottery Ass'n*, No 18-cv-01848-JSW, 2018 WL 10812690, at *6-7 (N.D. Cal. Aug. 13, 2018).

¶185.  This alleged deception — the term "fit" — is precisely the same one that forms the basis for all of Plaintiffs' claims.  The unjust enrichment claim must therefore be dismissed.

## CONCLUSION

For the forgoing reasons, Pervine's motion to dismiss the Complaint should be granted and the Complaint should be dismissed in its entirety with prejudice.

Dated: April 13, 2022

Respectfully submitted,

RUSKIN MOSCOU FALTISCHEK, P.C.

By:  _____
      Michael D. Brown, Esq.
      Melissa Sanderleaf, Esq.
*Attorney for Pervine Foods, LLC*
1425 RXR Plaza, 15th Floor
Uniondale, NY  11556
(516) 663-6600


Colleen Carey Gulliver, Esq.
DLA PIPER LLP (US)
*Co-counsel for Pervine Foods, LLC*
1251 Avenue of the Americas
27th Floor
New York, New York 10020
(212) 335-4737

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY, that on this 13th day of April 2022, a copy of the foregoing *Notice of Motion, Declaration of Michael D. Brown and Memorandum of Law in Support of Motion to Dismiss the Complaint* was served via the ECF system upon:

> MILBERG COLEMAN BRYSON
> PHILLIPS GROSSMAN, PLLC
> Mitchell Mark Breit, Esq.
> *Attorney for Plaintiff*
> 405 East 50[th] Street
> New York, New York  10022
> (212) 594-5300
> mbreit@milberg.com
>
> MILBERG COLEMAN BRYSON
> PHILLIPS GROSSMAN, PLLC
> Nick Suciu, III
> *Attorney for Plaintiff*
> 6905 Telegraph Road, Suite 115
> Bloomfield Hills, MI  48301
> (313) 303-3472
> nsuciu@milberg.com
>
> MILBERG COLEMAN BRYSON
> PHILLIPS GROSSMAN, PLLC
> Russell Busch
> *Attorney for Plaintiff*
> 800 S. Gay Street, Suite 1100
> Knoxville, TN  37929
> (630) 796-0903
> rbusch@milberg.com

/s/  *Michael D. Brown*
Michael D. Brown, Esq.