UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X

CADE SELJAK, JACOB BERNARDI, and
NANCY TAYLOR, Individually and On Behalf
of All Others Similarly Situated,

                    Plaintiffs,

            - against -

PERVINE FOODS, LLC,

                   Defendant.

---------------------------------------X

**MEMORANDUM AND ORDER**

21 Civ. 9561 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiffs Cade Seljak, Jacob Bernardi, and Nancy Taylor ("plaintiffs") bring this purported class action against defendant Pervine Foods, LLC ("defendant" or "Pervine Foods") on behalf of themselves and consumers who purchased defendant's FITCRUNCH Whey Protein Baked Bar products ("FITCRUNCH products") or FITBAR energy bar products ("FITBAR products") (collectively, the "products"). The products contain high levels of protein and come in flavors that sound like desserts, including Milk & Cookies, Chocolate Chip Cookie Dough, Apple Pie, and Chocolate Peanut Butter.

Plaintiffs, who purchased the products "for the protein" and "to help with muscle gain," also believed that the products were "healthy," despite the fact that the term "healthy" or related terms (e.g., "health," "healthful," "healthfully," "healthfulness," "healthier," "healthiest," "healthily," "healthiness") do not

appear anywhere on the products' packaging.  These terms also do not appear in the advertisements cited in the complaint, which, in any event, plaintiffs do not allege to have relied on when purchasing the products.

Rather, plaintiffs' belief that the products were "healthy" was based solely on defendant's use of the term "FIT" in the products' name.  Indeed, the crux of plaintiffs' claims is that "FIT" is a synonym of "healthy" and that defendant's use of the term "FIT" in the products' name therefore misleads consumers into thinking the products are "healthy," when, in fact, the products contain between 8 and 18 grams of fat, which exceeds the permissible level of fat in products labeled as "healthy" under the Federal Food Drug and Cosmetic Act's ("FDCA") regulations.  To be clear, each product's fat content is available along with other nutritional information on the ingredient panel, which appears on the back of each product's packaging.  Nevertheless, plaintiffs allege that all consumers who purchased the products would reasonably believe from defendant's use of the term "FIT" in the products' name that the products are "healthy."

Presently before the Court is defendant's motion to dismiss plaintiffs' complaint.  For the reasons set forth below, defendant's motion to dismiss is granted in its entirety.

BACKGROUND[1]

**A. The Parties**

Defendant is a nutritional products limited liability company organized under the laws of Pennsylvania with its principal place of business in New York. See Compl. ¶¶ 9, 15, ECF No. 1. Defendant sells high-protein snack products, including FITCRUNCH products and FITBAR products. See id. ¶ 10; Defendant's Motion to Dismiss ("Mot.") at 1, ECF No. 21.

Plaintiff Seljak is a New York citizen, who purchased "Peanut Butter flavored FITCRUNCH Protein Bars on or around January 23, February 16, March 18, May 9, and July 19 in 2021 from Amazon.com . . . for the low sugar protein[,] to help with muscle gain, and because he believed they were healthy." See Compl. ¶¶ 6, 60, 61. Seljiak "paid $31.42, $25.85, $22.49, $31.16, and $29.22 for each of the separate purchases," and alleges that "he would not have purchased the Product or would have paid significantly less" had he known that FITCRUNCH products do not meet the FDCA's definition of "healthy."[2]  Id. ¶¶ 62-63.

---

[1] Unless otherwise noted, the facts considered and recited here for purposes of the instant motion to dismiss are drawn from plaintiffs' complaint and are accepted as true, taking all reasonable inferences in plaintiffs' favor. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007); Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995).

[2] Considering each of Seljak's purchases were for multiple-FITCRUNCH product boxes, it is reasonable to presume that, prior to these multiple purchases, Seljak had made at least one singular purchase.

Plaintiff Bernardi is an Illinois citizen, who purchased FITCRUNCH products "in May 2021 from a local nutrition store near him" and "on or around July 17, 2021 from ebay.com . . . for the protein, and because he believed they were healthy." Id. ¶¶ 7, 65, 66. Bernardi "paid around $3.00 for the Product," and alleges that "he would not have purchased the Product or would have paid significantly less" had he known that FITCRUNCH products do not meet the FDCA's definition of "healthy." Id. ¶¶ 67-68.

Plaintiff Taylor is a California citizen, who purchased "two box[e]s of FITCRUNCH Protein Bars on July 28, 2021 [] from a Walmart located in Redding, California . . . believing it to be a healthy option that would help her lose weight." Id. ¶¶ 8, 70, 71. Taylor "paid $6.98" for each box and alleges that "she would not have purchased the Product or would have paid significantly less" had she known that FITCRUNCH products do not meet the FDCA's definition of "healthy." Id. ¶¶ 72-73.

**B. The Products**

Although defendant sells a variety of high-protein products, plaintiffs' complaint challenges defendant's use of the term "FIT" on only two of defendant's product lines: FITCRUNCH products and FITBAR products. See e.g., id. ¶ 1; Mot. at 1.

FITCRUNCH products come in a variety of flavors, including Chocolate Peanut Butter, Milk & Cookies, Apple Pie, Peanut Butter & Jelly, Chocolate Chip Cookie Dough, Mint Chocolate Chip, Lemon

Cake, Peanut Butter, and Caramel Peanut.  <u>See</u> Compl ¶¶ 1, 40-50;
Mot. at 2.  The package of each FITCRUNCH product states that it
is a "Whey Protein Baked Bar" and has a "baked soft cookie center."
Mot. at 2; ECF No. 20-1.  The package also provides the amount of
calories, protein, and sugar in each product; states it is gluten
free; and includes a picture of the bar with its primary flavor.
<u>Id.</u>  For example, the package of the Milk & Cookies FITCRUNCH
product includes a picture of Oreo cookies:



ECF No. 20-1 at 3 (Def. Exhibit 1).[3]

---

[3] Defendant attaches images of the FITCRUNCH and FITBAR products' packaging as
exhibits to its motion to dismiss.  <u>See</u> ECF Nos. 20-1, 20-2, 20-3.  The Court
takes judicial notice of these exhibits, which depict the food packaging
consistently referenced in the complaint and are publicly available on
defendant's website.  <u>See</u> <u>Klausner v. Annie's, Inc.</u>, 581 F. Supp. 3d 538, 545
n.3 (S.D.N.Y. 2022) (taking judicial notice of "clearer images of the Fruit
Snacks packaging that already appear in the body of the Amended Complaint");
<u>Nelson v. MillerCoors, LLC</u>, 246 F. Supp. 3d 666, 673 (E.D.N.Y. 2017) ("At the
motion to dismiss stage, courts may . . . on their own or at a party's request"
take judicial notice of "materials—such as product labels and packaging—
referenced numerous times in the complaint."); <u>Kacocha v. Nestle Purina Petcare
Co.</u>, No. 15 Civ. 5489 (KMK), 2016 WL 4367991, at *12 (S.D.N.Y. Aug. 12, 2016)
(taking judicial notice of packaging discussed at length in the complaint).

On the back of each FITCRUNCH product is an ingredient panel, which includes the product's fat content along with other nutritional information.[4] See Mot. at 11-13. Plaintiffs' complaint includes FITCRUNCH products' ingredient panels:



**Nutrition Facts**

1 serving per container
**Serving size 1 Bar (46g)**

**Calories per serving 210**

| Amount/serving | % Daily Value* | Amount/serving | % Daily Value* |
|---|---|---|---|
| **Total Fat** 11g | 14% | **Total Carbohydrate** 16g | 6% |
| Saturated Fat 8g | 40% | Dietary Fiber 1g | 4% |
| Monounsaturated Fat 2g | | Total Sugars 3g | |
| Polyunsaturated Fat 1g | | Includes 2g of Added Sugars | 4% |
| Trans Fat 0g | | Sugar Alcohol 11g | |
| **Cholesterol** 15mg | 5% | **Protein** 16g | 32% |
| **Sodium** 130mg | 6% | | |

Vitamin D 0mcg 6%  •  Calcium 65mg 6%  •  Iron 1mg 6%  •  Potassium 89mg 2%

*The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

**INGREDIENTS:** PROTEIN BLEND (WHEY PROTEIN ISOLATE, WHEY PROTEIN CONCENTRATE), VEGETABLE OILS (PALM KERNEL, PALM), MALTITOL, SOY PROTEIN ISOLATE, GLYCERIN, GELATIN [BOVINE], SORBITOL, SUGAR, COCOA (PROCESSED WITH ALKALI), WATER. **CONTAINS 2% OR LESS OF THE FOLLOWING:** GLUCOSE SYRUP, TAPIOCA STARCH, NATURAL FLAVOR, SUNFLOWER OIL, SUCRALOSE, SUNFLOWER LECITHIN, SOYBEAN OIL, SALT, BAKING SODA, TITANIUM DIOXIDE, VANILLA POWDER, MALTODEXTRIN, SODIUM CASEINATE, PROPYLENE GLYCOL MONO ESTERS, POTASSIUM SORBATE, MONO & DIGLYCERIDES, SOY LECITHIN, WHEY, ACETYLATED MONOGLYCERIDES, BETA CAROTENE, VITAMIN A PALMITATE, SILICON DIOXIDE, NATURAL TOCOPHEROLS, PEANUT AND ALMOND. **CONTAINS MILK, SOY, ALMOND, AND PEANUT PRODUCTS. MANUFACTURED IN A PLANT THAT PROCESSES MILK, SOY, WHEAT, TREE NUT, PEANUT, AND EGG PRODUCTS.**

©2021 CAREFULLY MANUFACTURED FOR PERVINE FOODS, LLC. PA 15236 | 1-844-850-5564
**PRODUCT QUESTION?** EMAIL: HELP@FITCRUNCH.COM
MAY BE PRODUCED WITH GENETIC ENGINEERING
LEARN MORE AT **WWW.FITCRUNCH.COM**
**MADE IN USA WITH DOMESTIC AND IMPORTED INGREDIENTS**

PROUD SUPPORTER OF



Compl. ¶ 45.

---

[4] The Court takes judicial notice of the numerous videos publicly available on defendant's website of consumers reading the ingredient panel available on the back of the products' label. See Videos, FITCRUNCH, https://fitcrunch.com/videos/ (last accessed March 1, 2023); see also Dwyer v. Allbirds, Inc., 598 F. Supp. 3d 137, 148 (S.D.N.Y. 2022) ("A court may also consider matters of which judicial notice may be taken. . . . includ[ing] information on a party's publicly available website, as long as the authenticity of the site is not in dispute.") (internal citations and quotations omitted).

By contrast, FITBAR products only come in two flavors: Peanut Butter Chocolate and Cranberry Vanilla Almond.  See Compl ¶¶ 1, 51-52; Mot. at 3.  The package of each FITBAR product states that it is an "energy bar;" is non-GMO, vegan, dairy free, soy free, and gluten-free; and has 12 grams of "plant-based protein."  See Mot. at 3; ECF No. 20-3 at 2, 4.  The package also instructs the customer to "see nutrition facts for total fat content," and includes a picture of the product's primary flavor.  Id.  For example, the package of the Peanut Butter Chocolate FITBAR product includes a picture of a peanut and a piece of chocolate:



ECF No. 20-3 at 2 (Def. Exhibit 3).

Like FITCRUNCH products, on the back of each FITBAR product is an ingredient panel, which includes the product's fat content, among other nutritional information. See Mot. at 11-13. Plaintiffs' complaint also depicts FITBAR products' ingredient panels:



Compl. ¶ 51.

In their complaint, plaintiffs allege that defendant's advertisements state that the products are "different from other nutritional products;" "[d]elicious nutrition for all FIT lifestyles;" and "the most delicious eating experiences that you'll find in high protein, low sugar products." Id. ¶¶ 17, 18, 22. Defendant's advertisements also include images of people exercising, see id. ¶¶ 18, 24, and state that the products should be consumed "post workout to refuel, as a snack between meals, and any other time when you need protein on the go," id. ¶¶ 17, 22. In addition, on defendant's website, defendant's co-founder, Chef Robert Irvine states that he set out to "create a brand-new bar that not only delivered great nutritional value" and believes that

"[n]o matter your age, gender, fitness goals, or dietary restrictions, I'm confident I've made something that's going to meet your needs." Id. ¶ 23. Significantly, however, the complaint does not allege that plaintiffs relied on these advertisements in forming their belief that the products they purchased were "healthy."[5]

**C. Procedural Background**

On November 18, 2022, plaintiffs filed their complaint against defendant on behalf of themselves and a purported national class, a New York subclass, a California subclass, and an Illinois subclass.[6]  See id. ¶ 76.  Plaintiffs' complaint includes eight

---

[5] The Court takes judicial notice of other publicly available videos on defendant's website, see supra footnote 4, in which fitness trainers reviewing the products caution consumers that while the products contain a high level of protein, they also contain a high number of calories and a high level of fat and therefore may not be suitable for consumers who are trying to lose weight, see e.g., Videos, FITCRUNCH, https://fitcrunch.com/videos/ (last accessed March 1, 2023) (linking Beau Smith, Fit Crunch Protein Bar Review, YOUTUBE (2019), https://www.youtube.com/watch?v=odrOXKtP3Ig&t=16s).

[6] To establish federal jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), "a plaintiff must prove to a reasonable probability that (1) there is minimal diversity (meaning at least one defendant and one member of the putative class are citizens of different states); (2) the putative class exceeds 100 people; and (3) the amount in controversy is greater than $5 million." Colpitts v. Blue Diamond Growers, 527 F. Supp. 3d 562, 573 n.2 (S.D.N.Y. 2021) (internal citations and quotations omitted). "Plaintiff[s] ha[ve] met [their] burden on all three requirements, and Defendant does not argue otherwise." Id. First, the complaint alleges minimal diversity because defendant is a limited liability company organized under the laws of Pennsylvania with its principal place of business in New York, while plaintiffs Bernardi and Taylor are citizens of Illinois and California. See Compl. ¶¶ 7-9, 11. Under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10); see also Claridge v. N. Am. Power & Gas, LLC, No. 15 Civ. 1261 (PKC), 2015 WL 5155934, at *1-2 (S.D.N.Y. Sept. 2, 2015) ("[A]s an LLC, [defendant] is an unincorporated association, and its citizenship in a CAFA action is determined pursuant to section 1332(d)(10)"). Second, "[t]he putative class is very likely to exceed 100 people as the Complaint requests certification of a nationwide class."

causes of action: (1) violation of New York's General Business Law § 349 (on behalf of plaintiff Seljak and the New York subclass); (2) violation of New York's General Business Law § 350 (on behalf of plaintiff Seljak and the New York subclass); (3) violation of California's Unfair Competition Law, California Business and Professions Code § 17200 (on behalf of plaintiff Taylor and the California subclass); (4) violation of California's Consumer Legal Remedies Act, California Civil Code §1750 (on behalf of plaintiff Taylor and the California subclass); (5) violation of California's False Advertising Law, California Business & Professions Code § 17500 (on behalf of plaintiff Taylor and the California subclass); (6) violation of Illinois' Consumer Fraud and Deceptive Trade Practices Act 815 ILCS 505/1 (on behalf of plaintiff Bernardi and the Illinois subclass); (7) breach of express warranty (on behalf of the national class or, alternatively, the subclasses); and (8) unjust enrichment (on behalf of the national class or, alternatively, the subclasses). See id. ¶¶ 86-186.

Plaintiffs seek various forms of relief, including an injunction preventing defendant from engaging in the alleged unlawful conduct, restitution, disgorgement, compensatory damages,

---

Colpitts, 527 F. Supp. at 573 n.2; see also Compl. ¶ 80 (alleging "[o]n information and belief, Class Members number in the thousands to millions"). Third, "[a]lthough the Complaint does not allege the amount of damages sought, there also is a reasonable probability that the amount in controversy exceeds $5 million." Colpitts, 527 F. Supp. at 573 n.2; see also Cohen v. Casper Sleep Inc., No. 17 Civ. 9325 (WHP), 2018 WL 3392877, at *7 (S.D.N.Y. July 12, 2018).

punitive damages, and an award of attorneys' fees and costs.  See id. at 46-47.

On February 4, 2022, defendant filed a letter pursuant to this Court's Individual Rule 2(B), requesting a pre-motion conference to address its anticipated motion to dismiss plaintiffs' complaint.  See ECF No. 11.  Plaintiffs filed a response on February 9, 2022.  See ECF No. 12.  On February 15, 2022, the Court granted defendant leave to bring its motion to dismiss without the necessity of a pre-motion conference.  See ECF No. 16.  In doing so, the Court also granted plaintiffs leave to file an amended complaint within two weeks of the Court's order "if, consistent with Rule 11, [plaintiffs could] assert additional allegations to cure any alleged deficiencies raised by defendants' letter."  See id. at 1.  After no amended complaint was filed, the parties filed a proposed briefing schedule on March 2, 2022, which was so ordered by the Court.  See ECF Nos. 17-18.

Defendant moved to dismiss plaintiffs' complaint on April 13, 2022.  See Mot.  In its motion, defendant argues that plaintiffs' claims should be dismissed for the following reasons: (1) plaintiffs' claims are pre-empted by the Nutrition Labeling and Education Act of 1990, 21 U.S.C. § 343, see id. at 5-7; (2) plaintiffs fail to plead an actionable misstatement, see id. at 7-13; (3) plaintiffs fail to plead a premium price injury, see

id. at 13-14; (4) plaintiffs lack standing, see id. at 14-16; and
(5) plaintiffs fail to state a claim, see id. at 16-25.

Plaintiffs filed their opposition on May 23, 2022.   See
Plaintiffs' Opposition to Defendant's Motion to Dismiss ("Opp."),
ECF No. 24.   On June 8, 2022, the Court granted defendant leave to
file five additional pages in its reply and plaintiffs leave to
file a five-page sur-reply.   See ECF No. 26.   Defendant filed its
reply on June 15, 2022, see Defendant's Reply in Support of its
Motion to Dismiss ("Reply"), ECF No. 30, and plaintiffs filed their
sur-reply on June 29, 2022, see Plaintiffs' Sur-reply in Support
of Their Opposition to Defendant's Motion to Dismiss ("Sur-
reply"), ECF No. 31.

## LEGAL STANDARD

Defendant moves to dismiss this action under Rule 12(b)(1)
for lack of standing and Rule 12(b)(6) for failure to state a
claim.   See Fed. R. Civ. P. 12(b)(1), (6); ECF No. 19 at 1.   "Where,
as here, the defendant moves for dismissal under Rule 12(b)(1),
Fed. R. Civ. P., as well as on other grounds, the court should
consider the Rule 12(b)(1) challenge first."   Rhulen Agency, Inc.
v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990)
(internal citations and quotations omitted).

### A. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter
jurisdiction under Rule 12(b)(1) when the district court lacks the

statutory or constitutional power to adjudicate it." <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000); <u>accord</u> <u>Ford v. D.C. 37 Union Local 1549</u>, 579 F.3d 187, 188 (2d Cir. 2009).  "To survive a motion to dismiss for lack of subject-matter jurisdiction based on standing pursuant to Rule 12(b)(1), the plaintiff 'must allege facts that affirmatively and plausibly suggest that it has standing to sue.'" <u>New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.</u>, 980 F. Supp. 2d 527, 533 (S.D.N.Y. 2013) (quoting <u>Amidax Trading Grp. v. S.W.I.F.T. SCRL</u>, 671 F.3d 140, 145 (2d Cir. 2011)).  Where the defendant places jurisdictional facts in dispute, the court may properly consider "evidence relevant to the jurisdictional question [that] is before the court." <u>Robinson v. Gov't of Malaysia</u>, 269 F.3d 133, 140 (2d Cir. 2001).  However, if "the defendants challenge only the legal sufficiency of the jurisdictional allegations, the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." <u>Id.</u>

**B. Rule 12(b)(6)**

Similarly, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows

13

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  While the Court accepts the truth of the allegations as pled, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice and we are not bound to accept as true a legal conclusion couched as a factual allegation." Brown v. Daikin Am., Inc., 756 F.3d 219, 225 (2d Cir. 2014) (internal citations and quotations omitted).  When ruling on a motion to dismiss pursuant to Rule 12(b)(6), a district court may consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

## DISCUSSION

### A. Standing

At the outset, the Court addresses the "threshold question" of whether plaintiffs have standing to bring their claims. Denney v. Deutsche Bank AG, 443 F.3d 253, 263 (2d Cir. 2006).  Defendant argues that plaintiffs lack standing: (1) to assert claims related to the FITBAR products because plaintiffs only claim to have purchased FITCRUNCH products, which are not "substantially similar" to FITBAR products, see Mot. at 14-16, Compl. ¶¶ 60, 65, 70; and (2) to seek injunctive relief because plaintiffs do not

allege that they would purchase the products again, see Mot. at 16; Compl. ¶¶ 63, 68, 73.[7]  The Court considers each argument in turn.

### 1. Claims Related to FITBAR Products

"[C]ourts in this Circuit have held that, subject to further inquiry at the class certification stage, a named plaintiff has standing to bring class action claims under state consumer protection laws for products that he did not purchase, so long as those products, and the false or deceptive manner in which they were marketed, are 'sufficiently similar' to the products that the named plaintiff did purchase." Daniel v. Tootsie Roll Indus., LLC, No. 17 Civ. 7541 (NRB), 2018 WL 3650015, at *5 (S.D.N.Y. Aug. 1, 2018) (citing Mosley v. Vitalize Labs, LLC, Nos. 13 Civ 2470 (RJD) (RLM), 14 Civ. 4474 (RJD) (RLM), 2015 WL 5022635, at *7 (E.D.N.Y. Aug. 24, 2015); Bautista v. CytoSport, Inc., 223 F. Supp. 3d 182, 188-89 (S.D.N.Y. 2016); Kacocha, 2016 WL 4367991, at *9-10; Quinn v. Walgreen Co., 958 F. Supp. 2d 533, 541-42 (S.D.N.Y. 2013)). Where "the defendant did not actually injure a named plaintiff," however, the "claims of putative class members are too dissimilar

---

[7] Contrary to plaintiffs' suggestion, defendant does not dispute that plaintiffs have adequately pled an injury-in-fact for standing purposes.  See Opp. at 2-5. Rather, defendant alleges, as an independent ground for dismissal on the merits, that plaintiffs have not adequately alleged an "injury as a result of a deceptive act," as is required under plaintiffs' state statutory claims. See Mot. at 13-14; see also John v. Whole Foods Mkt. Grp., Inc., 858 F.3d 732, 736 (2d Cir. 2017) (describing the injury-in-fact requirement as "a low threshold" and acknowledging that "no one disputes that overpaying for a product results in a financial loss constituting a particularized and concrete injury in fact"). Given that the Court grants defendant's motion to dismiss in its entirety, the Court need not address this argument.

to support standing." Langan v. Johnson & Johnson Consumer Cos., Inc., 897 F.3d 88, 94 (2d Cir. 2018). In other words, if plaintiffs have not adequately pled a claim against defendant for the FITCRUNCH products they did purchase, they cannot bring claims against defendant for the FITBAR products they did not purchase— even if those FITBAR products are substantially similar to the purchased FITCRUNCH products. Thus, the Court first addresses plaintiffs' claims related to FITCRUNCH products, before considering whether plaintiffs can bring claims related to FITBAR products. See infra Section E.

### 2. Injunctive Relief

A plaintiff seeking an injunction "must show the three familiar elements of standing: injury in fact, causation, and redressability." Cacchillo v. Insmed, Inc., 638 F.3d 401, 404 (2d Cir. 2011) (citing Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009)). "Plaintiffs lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 239 (2d Cir. 2016) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 111-12 (1983)); see also Am. Civil Liberties Union v. Clapper, 785 F.3d 787, 800 (2d Cir. 2015) ("The Supreme Court has repeatedly reiterated that threatened injury must be certainly impending to constitute injury in fact, and that allegations of possible future

injury are not sufficient.") (internal citations and quotations omitted).

"Moreover, the fact that unknowing class members might purchase [the] products based on the defendant['s] allegedly unlawful advertising does not establish standing." Tomasino v. Estee Lauder Cos., 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014); cf. Compl. ¶¶ 133, 150.  Indeed, "[t]hat a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured.'"  Lewis v. Casey, 518 U.S. 343, 357 (1996) (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 40 n.20 (1976)).  Thus, "[f]or each claim asserted in a class action, there must be at least one class representative (a named plaintiff or a lead plaintiff) with standing to assert that claim."  Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co., 862 F. Supp. 2d 322, 331-32 (S.D.N.Y. 2012) (citing Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 504 F.3d 229, 241 (2d Cir. 2007)).

Here, plaintiffs only allege a past injury:  that they would not have bought or would have paid less for the FITCRUNCH products they purchased had known the alleged truth about their contents. See Compl. ¶¶ 62-63, 67-68, 72-73.  Accordingly, plaintiffs have not established a real or immediate threat of injury warranting injunctive relief.  See O'Shea v. Littleton, 414 U.S. 488, 495

(1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief."); Nicosia v. Amazon.com, Inc., 834 F.3d 220, 239 (2d Cir. 2016) ("Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way.").

In any event, even if plaintiffs' complaint did include allegations of future injury, there would be no likelihood that plaintiffs would subject themselves to future injury by repurchasing defendant's allegedly deceptive products now that they are aware of the true product contents. See Kommer v. Bayer Consumer Health, a Div. of Bayer AG, 710 F. App'x 43, 44 (2d Cir. 2018) (providing that plaintiff concedes that "now [that he] knows of Defendants' [alleged] deception and false advertising, . . . [plaintiff] is no longer likely to purchase another pair of Dr. Scholl's Custom Fit Orthotics Inserts ever again"); Alce v. Wise Foods, Inc., No. 17 Civ. 2402 (NRB), 2018 WL 1737750, at *6 (S.D.N.Y. Mar. 27, 2018) ("Consumers who were misled by deceptive food labels lack standing for injunctive relief because there is no danger that they will be misled in the future.") (internal citation omitted); Davis v. Hain Celestial Grp., Inc., 297 F. Supp. 3d 327, 339 (E.D.N.Y. 2018) ("To the extent that plaintiff was deceived by defendants' products, he is now aware of the truth and

18

will not be harmed again in the same way . . . [he] therefore lacks standing to seek an injunction."); Elkind v. Revlon Consumer Prods. Corp., No. 14 Civ. 2484 (JS) (AKT), 2015 WL 2344134, at *3 (E.D.N.Y. May 14, 2015) ("Plaintiffs are now aware of the alleged misrepresentations that they challenge, so there is no danger that they will again be deceived by them.").

Plaintiffs therefore lack standing to bring their claims for injunctive relief, and those claims are dismissed.[8]

**B. Pre-emption**

The Court next addresses defendant's argument that plaintiffs' claims are pre-empted by the Nutrition Labeling and Education Act ("NLEA"), 21 U.S.C. § 343, which was passed in 1990 as an amendment to the FDCA. See Mot. at 5-7. The FDCA, "enacted in 1938, generally prohibits misbranding of food." New York State Rest. Ass'n v. New York City Bd. of Health, 556 F.3d 114, 118 (2d Cir. 2009). The FDCA empowers the Federal Food and Drug

---

[8] Plaintiffs argue that they have standing to seek injunctive relief based on Ackerman v. Coca-Cola Co., No. 09 Civ. 395, 2013 WL 7044866, at *15 n.23 (E.D.N.Y. July 18, 2013), in which the court held that "plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer," and one other case from the Eastern District of New York, Belfiore v. Procter & Gamble Co., 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015), which relies on Ackerman. See Opp. at 5. The Court joins the courts in this Circuit that have declined to follow the reasoning in Ackerman on this issue, given the Second Circuit has since confirmed that "in a consumer misrepresentation case, '[p]laintiffs lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury." Buonasera v. Honest Co., Inc., 208 F. Supp. 3d 555, 565 n.3 (S.D.N.Y. 2016) (citing Nicosia, 834 F.3d at 239); see also Silva v. Hornell Brewing Co., No. 20 Civ. 756 (ARR) (PL), 2020 WL 4586394, at *7 (E.D.N.Y. Aug. 10, 2020) (finding that Ackerman and Belfiore are "inconsistent with Article III and with Supreme Court and Second Circuit case law").

Administration ("FDA") to: "(a) protect the public health by ensuring that 'foods are safe, wholesome, sanitary, and properly labeled;' (b) promulgate regulations pursuant to this authority; and (c) enforce its regulations through administrative proceedings." Melendez v. ONE Brands, LLC, No. 18 Civ. 6650 (CBA) (SJB), 2020 WL 1283793, at *3 (E.D.N.Y. Mar. 16, 2020) (citing 21 U.S.C. § 393(b)(2)(A); 21 C.F.R. § 7.1).   "The NLEA sought 'to clarify and to strengthen the [FDA's] legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods.'" N.Y. State Rest. Ass'n, 556 F.3d at 118 (quoting H.R. Rep. No. 101-538, at 7 (1990), reprinted in 1990 U.S.C.C.A.N. 3336, 3337).

"Consistent with the NLEA's purpose of promoting uniform national labeling standards, the statute includes an express preemption provision." Izquierdo v. Mondelez Int'l, Inc., No. 16 Civ. 4697 (CM), 2016 WL 6459832, at *3 (S.D.N.Y. Oct. 26, 2016). In relevant part, the pre-emption provision covers express and implied nutrient claims under 21 U.S.C. § 343(r) as it provides that "no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . any requirement respecting any claim of the type described in section 343(r)(1) of this title made in the label or labeling of food that is not identical to the

requirement of section 343(r) of this title." 21 U.S.C. § 343-1(a)(5).

Under this express pre-emption provision, "state-law claims are preempted if they impose requirements regarding food labeling that are 'not identical to' those imposed by the FDCA," meaning "they 'differ' from or are 'not imposed' by federal law." Melendez, 2020 WL 1283793, at *4 (quoting 21 C.F.R. § 100.1(c)(4)). This express pre-emption provision also "reaches beyond positive enactments, such as statutes and regulations, to embrace common-law duties." In re PepsiCo, Inc., Bottled Water Mktg. & Sales Pracs. Litig., 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008) (quoting Bates v. Dow Agrosciences L.L.C., 544 U.S. 431, 443 (2005)).

Plaintiffs' claims are asserted under New York, California, and Illinois consumer protection laws. Those laws "broadly prohibit the misbranding of food in language largely identical to that found in the FDCA" and "explicitly incorporate[]" the FDCA's labeling provisions. Ackerman, 2010 WL 2925955, at *4; see also N.Y. Agric. & Mkts. Law § 201; Cal. Health & Saf. Code, § 110100(a); ICFA 815 ILCS 620/21(j); Compl. ¶¶ 56-58. As such, claims covered by the FDCA's express pre-emption provision can nevertheless be brought under these state laws so long as they "parallel the FDCA's requirements." Ackerman, 2010 WL 2925955, at *6. If those claims are "not identical to" the FDCA's requirements; however, they would be pre-empted.

The crux of plaintiffs' claims is that defendant's use of the term "FIT" misleads consumers into thinking the products are "healthy," when, in fact, the products contain between 8 and 18 grams of fat, which exceeds the permissible level of fat in products labeled as "healthy" under FDCA regulations.  See 21 C.F.R. § 101.65(d)(2).  In their complaint, plaintiffs specifically allege that defendant's "FIT" representation is an "implied nutrient content claim" under 21 U.S.C. § 343(r)(1) not made in accordance with the FDCA's regulatory definition for "healthy," rendering the products "mislabeled."  See Compl. ¶¶ 31-33. Plaintiffs also allege in their complaint that defendant's "FIT" representation violates 21 U.S.C. § 343(a)(1) by causing the products' labeling to be "false or misleading."  See id. ¶¶ 53, 55, 95, 129; see also id. ¶¶ 28-29 (providing that a product's name, which is referred to in FDCA regulations as its "statement of identity," must be an "appropriately descriptive term" that is not misleading (citing 21 C.F.R. § 101.3(b)(3))).

Under both provisions, however, plaintiffs' theory seems to be the same:  that the products are "misbranded" or "misleading" because they trick consumers into thinking that the products are "healthy," when they do not comply with the FDCA's definition for "healthy."  In other words, plaintiffs do not assert an alternative reason as to why the products are "false or misleading" under 21 U.S.C. § 343(a)(1), other than that they contain too much fat.

Rather than providing clarity in their opposition to defendant's motion to dismiss, plaintiffs put forth pre-emption arguments relating only to their claims under 21 U.S.C. § 343(r)(1) and seem to forget about their claims under 21 U.S.C. § 343(a)(1).  Although the Court may deem plaintiffs to have "forfeited th[eir] [21 U.S.C. § 343(a)(1)] argument by [their] utter failure to raise it" in their opposition brief, United States v. Gladden, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019), the Court addresses both arguments as there is a "basic presumption against pre-emption." Bates v. Dow Agrosciences LLC, 544 U.S. 431, 449 (2005).

### A. Implied Nutrient Content Claim

Plaintiffs' argument that defendant's use of the term "FIT" is an "implied nutrient content claim" that fails to meet the FDCA's definition for "healthy" arises under 21 U.S.C. § 343(r)(1). Section 343(r)(1) provides that "[a] food shall be deemed to be misbranded" if "a claim is made in the label or labeling of the food which expressly or by implication . . . characterizes the level of any nutrient which is of the type required . . . to be in the label or labeling of the food[,] unless the claim is made in accordance with" a regulatory definition established by the FDCA.  21 U.S.C. § 343(r)(1)(A); see also 21 C.F.R. § 101.13(b)(2) ("An implied nutrient content claim is any claim that [d]escribes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (e.g., 'high in

oat bran'); or [s]uggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient (e.g., 'healthy, contains 3 grams (g) of fat')").

Here, plaintiffs allege that defendant's products are misbranded because "the term 'healthy' or related terms (e.g., 'health,' 'healthful,' 'healthfully,' 'healthfulness,' 'healthier,' 'healthiest,' 'healthily,' and 'healthiness') [may be used] as an implied nutrient content claim on the label or in labeling of a food that is useful in creating a diet that is consistent with dietary recommendations" only if the foods meets the FDCA's corresponding "conditions for fat, saturated fat, cholesterol, and other nutrients." 21 C.F.R. § 101.65(d)(2).  One such requirement is that the "healthy" food contain a "low fat" level of "3 g or less of fat per reference amount customarily consumed."  Id. (citing 21 C.F.R. § 101.62(b)(2)).  The products, which "contain between 8 and 18 grams of fat, depending on the flavor and size" of the product, do not meet the FDCA's low fat requirement.  Compl. ¶ 2; see also id. ¶¶ 40-52.

Given the NLEA's express pre-emption provision covers implied nutrient claims under 21 U.S.C. § 343(r), plaintiffs may not bring an implied nutrient claim under state law that "would impose requirements in addition, and not identical, to federal requirements."  In re PepsiCo, Inc., Bottled Water Mktg. & Sales

Pracs. Litig., 588 F. Supp. 2d at 537.  Accordingly, as Judge Anello explained when he decided this **exact** issue in a case concerning FIT SNACKS protein bars brought by plaintiffs' counsel in the Southern District of California on December 8, 2021,[9] plaintiffs must plausibly plead that: (1) "the FDCA regulates the word 'FIT' as a synonym of 'healthy' under 21 CFR § 101.65(d)(2);" and (2) that "the word ["FIT"], in connection with other words, characterizes or otherwise makes a claim about a particular nutrient" under 21 CFR § 101.65(d)(1)(ii).  Vitiosus v. Alani Nutrition, LLC, No. 21 Civ 2048 (MMA) (MDD), 2022 WL 2441303, at *4 (S.D. Cal. July 5, 2022); see also Grausz v. Kroger Co., No. 19 Civ. 449 (JLS) (AGS), 2020 WL 12688138, at *5 (S.D. Cal. Mar. 3, 2020) ("The Product's label, however, 'does not state that [the Product] is healthy 'because of its nutrient content' or directly link the health claim to any nutrient claim.").

Just as Judge Anello found, plaintiffs here have not even "plausibly pleaded that section 101.65(d)'s definition of 'healthy' extends to synonyms such as the word 'FIT.'" Vitiosus, 2022 WL 2441303, at *4.  As defendant points out, "the FDA already determined decades ago that it would not define synonyms for

---

[9] Counsel has a "'continuing duty to inform the Court of any development which may conceivably affect the outcome' of the litigation." Bd. of License Comm'rs of Town of Tiverton v. Pastore, 469 U.S. 238, 240 (1985) (quoting Fusari v. Steinberg, 419 U.S. 379, 391 (1975)).  The fact that plaintiffs' counsel failed to inform the Court of Judge Anello's decision, which addresses claims and arguments that are **identical** to those made in this case, is astonishing and wholly unacceptable.

healthy as it had done for other implied nutrient claims." Reply at 2 (citing Food Labeling: Nutrient Content Claims, Definition of Term: Healthy, 59 Fed. Reg. 24232 (May 10, 1994)). Indeed, in the context of 21 CFR § 101.65(d)(2), the FDA has stated:

> A few comments urged FDA to extend the definition of "healthy" to terms like "wholesome," "nutritious," "good for you," and "food for today's diet." One of these comments further stated that if FDA adopts a stringent definition for "healthy," and fails to apply it to synonymous terms, the food industry might simply replace "healthy" with these other terms.

> While the agency recognizes that terms such as "nutritious," "wholesome," and "good for you" can be implied nutrient content claims when they appear in a nutritional context on a label or in labeling, the agency does not believe that they are necessarily synonymous with "healthy." FDA has concluded, as stated in the general principles final rule (58 FR 2302 at 2375), that it does not have sufficient information to determine whether definitions for the terms mentioned in these comments are needed, and what those definitions should be. The comments to the "healthy" proposal have not provided the agency with the information that it would need to develop definitions or to establish these terms as synonyms for the term "healthy." Thus, the agency is not extending the definition of "healthy" to these terms.

> However, the agency advises that when these terms appear in association with an explicit or implicit nutrient content claim or statement about a nutrient, they will be implied nutrient content claims and subject to the provisions of section 403(r) of the act. Thus, the use of such claims, if they are not defined by the agency, or if they are not exempted through the "grandfather" provision, would cause the product to be misbranded and subject to regulatory action. Furthermore, when these terms appear on the label other than in association with an explicit or implicit nutrient content claim or statement about a nutrient, they are subject to regulation under the general misbranding provisions of

> section 403(a) of the act. Therefore, if a firm is
> considering using such terms on its label or in its
> labeling in a nutritional context, it should petition
> FDA to define the term under section 403(r)(2)(A)(i) of
> the act.

59 Fed. Reg. 24235-36.[10]  "Therefore, it is plainly clear that the

FDA's definition of 'healthy' does not apply to 'FIT.'" Vitiosus,

2022 WL 2441303, at *6.

In their sur-reply, plaintiffs highlight the portion of the

FDA's statement that reads "when these terms appear in association

with an explicit or implicit nutrient content claim or statement

about a nutrient, they will be implied nutrient content claims."

Sur-reply at 2 (citing 59 Fed. Reg. 24235-36).  However,

"[p]laintiffs do not [then] plead that the word ["FIT"] alone makes

any "explicit or implicit claim or statement about a nutrient."

Vitiosus, 2022 WL 2441303, at *4.  Nor can they.  "FIT" does not

appear in association with a nutrient content claim about the

products' fat content.  The FDCA's and plaintiff's own examples of

terms "made in association with an explicit claim or statement

about a nutrient," which clearly differ from defendant's

representation here, make this clear: "healthy, contains 3 grams

(g) of fat," "[n]utritious, contains 3 grams of fiber," "[b]est

---

[10] The Court takes judicial notice of the FDA's response to comments.  See In
re Frito-Lay N. Am., Inc. All Nat. Litig., No. 12 MDL 2413 (RRM) (RLM), 2013 WL
4647512, at *4 (E.D.N.Y. Aug. 29, 2013) (providing that a court is permitted to
take judicial notice of "agency letters, policy and guidance documents,
websites, and other agency data made available to the public outside of the
Federal Register by administrative agencies.") (citing cases).

choice, contains 200 mg sodium," and "[g]ood for you, contains 5 grams of fat," see 21 C.F.R. § 101.13(b)(2); Opp. at 11 (citing FDA, Guidance for Industry a Labeling Guide for Restaurants and Other Retail Establishments Selling Away-from-home Foods (2008), 2008 WL 2155726, at *10-11); Sur-reply at 1 (same).[11]

Therefore, plaintiffs' claims arising under 21 U.S.C. § 343(r)(1) are pre-empted, and defendant's motion to dismiss is granted on this basis.

### B. False or Misleading Labeling

By contrast, however, plaintiffs' claims that defendant's use of the term "FIT" on their "labeling is false or misleading," which arise under 21 U.S.C. § 343(a)(1), are not covered by the NLEA's express pre-emption provision. See Compl. ¶¶ 28-29, 53, 55, 95, 129; see also Parks v. Ainsworth Pet Nutrition, LLC, 377 F. Supp. 3d 241, 245 (S.D.N.Y. 2019) ("Notably, the [NLEA's] preemption provision does not mention § 343(a)."); Manuel v. Pepsi-Cola Co., No. 17 Civ. 7955 (PAE), 2018 WL 2269247, at *4 (S.D.N.Y. May 17, 2018) ("Significant here, the NLEA's preemption provision does not apply to § 343(a), the FDCA's prohibition on false or misleading

---

[11] To support their implied nutrient content argument, plaintiffs also cite to 21 C.F.R. § 101.13(b)(4), which states that "[r]easonable variations in the spelling of the terms defined in part 101 and their synonyms are permitted provided these variations are not misleading (e.g., 'hi' or 'lo')," Opp. at 10-13. In light of the FDA's statement in 59 Fed. Reg. 24232, however, the Court does not find that "FIT" is a permissible synonym of "healthy" under 21 C.F.R. § 101.65(d)(2). Moreover, the sole case cited by plaintiffs in support of this argument, Hadley v. Kellogg Sales Co., 273 F. Supp. 3d 1052, 1083 (N.D. Cal. 2017), did not consider the issue of pre-emption.

labeling."), <u>aff'd</u>, 763 F. App'x 108 (2d Cir. 2019).  Moreover, "the NLEA is clear on preemption, stating that it 'shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under [21 U.S.C. § 343-1(a)] of the [FDCA].'" <u>New York State Rest. Ass'n</u>, 556 F.3d at 123 (citing Pub. L. No. 101-535, § 6(c)(1), 104 Stat. 2353, 2364 (21 U.S.C. § 343-1 note)).  "Therefore, because the NLEA preemption provision does not apply to § 343(a), the prohibition on false or misleading labeling, Plaintiff[s'] state law claims that the labeling of the Products was false and misleading are not preempted." <u>Parks</u>, 377 F. Supp. 3d 241 at 246; <u>see also</u> <u>Axon v. Citrus World, Inc.</u>, 354 F. Supp. 3d 170, 181 (E.D.N.Y. 2018); <u>Ault v. J.M. Smucker Co.</u>, No. 13 Civ. 3409 (PAC), 2014 WL 1998235, at *3 (S.D.N.Y. May 15, 2014).

Defendant's motion to dismiss is denied on this basis.  Thus, the Court turns to the merits of plaintiffs' state and common law claims based on their argument that defendant's use of the term "FIT" on their "labeling is false or misleading" under 21 U.S.C. § 343(a)(1).

## C. State Statutory Claims

Plaintiffs assert the following claims under New York, California, and Illinois law: (1) violation of New York's General Business Law ("GBL") § 349; (2) violation of New York's GBL § 350; (3) violation of California's Unfair Competition Law ("UCL"),

California Business and Professions Code §17200; (4) violation of
California's Consumer Legal Remedies Act ("CLRA"), California
Civil Code §1750; (5) violation of California's False Advertising
Law ("FAL"), California Business & Professions Code §17500; and
(6) violation of Illinois' Consumer Fraud and Deceptive Trade
Practices Act ("ICFA") 815 ILCS 505/1.  See Compl. ¶¶ 86-186.  The
Court begins by reviewing the relevant consumer protection laws.

### 1. New York Statutory Claims

"Section 349 of the General Business Law, enacted in 1970 as
a broad consumer protection measure, proscribes, '[d]eceptive acts
or practices in the conduct of any business, trade or commerce or
in the furnishing of any service in [New York].'"  Izquierdo, 2016
WL 6459832, at *5 (quoting N.Y. Gen. Bus. Law § 349(a)).  Section
350 of the General Business Law prohibits "[f]alse advertising in
the conduct of any business, trade or commerce or in the furnishing
of any service."  N.Y. Gen. Bus. Law § 350.

To establish a prima facie case under GBL §§ 349 or 350, "a
plaintiff must demonstrate that (1) the defendant's deceptive acts
were directed at consumers, (2) the acts are misleading in a
material way, and (3) the plaintiff has been injured as a
result."  Maurizio v. Goldsmith, 230 F.3d 518, 521-22 (2d Cir.
2000); see also Wurtzburger v. Ky. Fried Chicken, No. 16 Civ. 8186
(NSR), 2017 WL 6416296, at *2 (S.D.N.Y. Dec. 13, 2017) (providing
a claim under GBL §§ 350 "must meet all of the same elements as a

claim under GBL § 349" (citing <u>Goshen v. Mut. Life Ins. Co. of N.Y.</u>, 98 N.Y.2d 314, 324 n.1 (2002)).  "The New York Court of Appeals has adopted an objective definition of 'misleading' under §§ 349 and 350, whereby the act or omission must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" <u>Braynina v. TJX Cos.</u>, No. 15 Civ. 5897 (KPF), 2016 WL 5374134, at *5 (S.D.N.Y. Sept. 26, 2016) (quoting <u>Orlander v Staples, Inc.</u>, 802 F.3d 289, 300 (2d Cir. 2015)).

### 2. California Statutory Claims

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  The statute "is violated where a defendant's act or practice is (1) unlawful, (2) unfair, (3) fraudulent, or (4) in violation of [the FAL]." <u>Lopez v. L'Oreal USA, Inc.</u>, No. 21 Civ. 7300 (ALC), 2022 WL 4479891, at *3 (S.D.N.Y. Sept. 27, 2022) (quoting <u>Lozano v. AT & T Wireless Servs., Inc.</u>, 504 F.3d 718, 731 (9th Cir. 2007)). "The CLRA makes it unlawful to use 'unfair methods of competition and unfair or deceptive acts or practices' in the sale of goods or services to a consumer." <u>Id.</u> (quoting Cal. Civ. Code § 1770).  The FAL "prohibits the dissemination in any advertising medium of any 'statement' concerning 'real or personal property' offered for sale, 'which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue

or misleading.'" <u>Hughes v. Ester C Co.</u>, 930 F. Supp. 2d 439, 466, 466 (E.D.N.Y. 2013) (quoting Cal. Bus. & Prof. Code § 17500).

Claims brought under California's UCL, CLRA, and FAL "are governed by the reasonable consumer test." <u>Williams v. Gerber Prods. Co.</u>, 552 F.3d 934, 938 (9th Cir. 2008) (internal citations and quotations omitted). "Under the reasonable consumer standard, [plaintiffs] must show that members of the public are likely to be deceived." <u>Id.</u>

### 3. Illinois Statutory Claims

Illinois' ICFA prohibits "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression or omission of any material fact." 815 Ill. Comp. Stat. 505/2. "To state a claim under the ICFA, a plaintiff must show: '(1) a deceptive act or practice by defendant; (2) defendant's intent that plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade and commerce.'" <u>In re Gen. Motors LLC Ignition Switch Litig.</u>, 257 F. Supp. 3d 372, 410 (S.D.N.Y. 2017), <u>modified on reconsideration</u>, No. 14-MC-2543 (JMF), 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017) (quoting <u>Connick v. Suzuki Motor Co.</u>, 174 Ill.2d 482 (1996)).

A statement is deceptive if it "creates a likelihood of deception or has the capacity to deceive," <u>Bober v. Glaxo Wellcome</u>

PLC, 246 F.3d 934, 938 (7th Cir. 2001), "in that it may mislead a 'reasonable consumer.'" Fuchs v. Menard, Inc., No. 17 Civ. 1752, 2017 WL 4339821, at *3 (N.D. Ill. Sept. 29, 2017) (quoting Mullins v. Direct Digital, LLC, 795 F.3d 654, 673 (7th Cir. 2015)). Furthermore, "[w]hen the plaintiff is a private party, like plaintiffs in this matter, an action brought under the ICFA requires the plaintiff plead and then show she suffered 'actual damage' as a result of the defendant's violation of the ICFA." In re Edgewell Pers. Care Co. Litig., No. 16 Civ. 3371 (KAM) (RLM), 2018 WL 7858623, at *13 (E.D.N.Y. Sept. 4, 2018) (citing 815 I.L.C.S. § 505/10a).

### 4. Failure to State a Claim

While the New York, California, and Illinois statutes differ in some ways, the "core element of each of plaintiffs' causes of action is the existence of a false statement or deceptive act'" that would have misled a reasonable consumer. Kardovich v. Pfizer, Inc., 97 F. Supp. 3d 131, 137 (E.D.N.Y. 2015); see also Opp. at 12 ("Plaintiffs' claims (alleging violations of the consumer protection laws of California, New York, and Illinois) are all based on an objective standard: whether a reasonable consumer would be deceived by Defendant's labels."). Defendant argues that plaintiffs have not pled an actionable misstatement. See Opp. at 7-13. The Court agrees, concluding, as a matter of law, that FITCRUNCH products' labels are not misleading.

"[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." Mantikas v. Kellogg Co., 910 F.3d 633, 636 (2d Cir. 2018) (quoting Fink v. TimeWarner Cable, 714 F.3d 739, 740-41 (2d Cir. 2013)) (per curiam).[12]  Courts must "consider the challenged advertisement as a whole, including disclaimers and qualifying language." Id.; see also In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig., 275 F. Supp. 3d 910, 921-22 (N.D. Ill. 2017) ("The allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff . . . the 'context of the packaging as a whole' must be considered in evaluating whether deception has occurred." (quoting Davis v. G.N. Mortg. Corp., 396 F.3d 869, 884 (7th Cir. 2005); Williams, 552 F.3d at 939).  In doing so, courts, at the motion to dismiss stage, have routinely rejected claims that deception has occurred.[13]  See e.g., Axon v. Florida's Nat. Growers, Inc., 813 F. App'x 701, 705

---

[12]  Plaintiffs are mistaken that Mantikas "disapproved of the 'ambiguity' standard" discussed infra.  Opp. at 18.  Rather, "[t]he Second Circuit's decision in Mantikas is a good example of a case involving packaging found to be unambiguous and misleading."  Boswell v. Bimbo Bakeries USA, Inc., 570 F. Supp. 3d 89, 94-95 (S.D.N.Y. 2021).

[13]  Plaintiffs argue that "how a reasonable consumer would interpret a products' label is a question of fact that can only be resolved after evidence is presented."  Opp. at 12.  They are wrong.  It is "well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer."  Jessani v. Monini N. Am. Inc., 744 Fed. App'x 18, 19 (2d Cir. 2018) (quoting Fink, 714 F.3d at 741); see also Nelson v. MillerCoors, LLC, 246 F. Supp. 3d 666, 674 (E.D.N.Y. 2017) (rejecting the same argument "that this question is not appropriate for a motion to dismiss"); Ibarrola v. Kind, LLC, 83 F. Supp. 3d 751, 756 (N.D. Ill. 2015) ("[A] court may dismiss the complaint if the challenged statement was not misleading as a matter of law." (citing Bober, 246 F.3d at 940).

(2d Cir. 2020) (affirming decision that brand name was not misleading in context of "packaging as a whole); Engram v. GSK Consumer Healthcare Holdings (US) Inc., No. 19 Civ. 2886 (EK)(PK), 2021 WL 4502439, at *5 (E.D.N.Y. Sept. 30, 2021) ("Plaintiff's argument is flimsy even solely by reference to the front of the packaging, without resorting to the Directions on the reverse for clarification."); Davis, 297 F. Supp. 3d at 335 ("The label taken as a whole makes clear that the juice was subjected to pressure for food safety purposes."); Fuchs, 2017 WL 4339821, at *5 (finding no deceptiveness in light of "all the information available to the consumer").

Here, the FITCRUNCH label indicates that the product is a "whey protein bar," has a "soft cookie center," and has a high number of calories. Mot. at 2. Indeed, as plaintiffs highlight in their opposition to defendant's motion to dismiss, the number of calories listed on many of the FITCRUNCH products' labels well exceeds the number of calories in a candy bar.[14] See Opp. at 13-14 (comparing 380 calories in a FITCRUNCH Caramel Peanut bar to 250 calories in a Snickers candy bar). The FITCRUNCH products' labels also include images of desserts, such as Oreo cookies. See Mot. at 2; ECF No. 20-1 at 3. Accordingly, before even turning to the ingredient label, a reasonable consumer viewing this label

---

[14] The calorie count in FITCRUNCH products ranges from 190 to 380 calories. See Compl. ¶¶ 40-50.

simply would not believe that FITCRUNCH products are "healthy." Indeed, such belief is plainly "inconsistent with the face of the package, and with common sense." Engram, 2021 WL 4502439, at *5.

Even assuming arguendo that defendant's use of the term "FIT" was ambiguous and could be interpreted to mean "healthy,"[15] the ingredients panel available on the back of the packaging, which includes the product's fat content, can easily cure that ambiguity.[16]   See Mot. at 11-13; see also Reyes v. Crystal Farms

---

[15] The Court disagrees with plaintiffs' suggestion that "healthy" is the "ordinary meaning" of the term "FIT." Opp. at 13. While plaintiffs attempt to support their argument by citing to an excerpt from Merriam-Webster's definition of the term "FIT," Merriam-Webster's complete definition clarifies that the term "FIT" is subject to a number of potential interpretations: "(1)(A) acceptable from a particular viewpoint (as of competence or morality): PROPER; (B)(1) adapted to an end or design: suitable by nature or by art; (B)(2) adapted to the environment so as to be capable of surviving; (2): sound physically and mentally: HEALTHY; (3)(A) put into a suitable state: made ready; (3)(b) being in such a state as to be or seem ready to do or suffer something." Fit, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/fit (last accessed March 1, 2023).  The Court takes judicial notice of Merriam-Webster complete definition, cited, in part, in the complaint. See Compl. ¶ 34; Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("[O]n a motion to dismiss, a court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." (quoting Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993)).  In viewing the term "FIT" in the context of the entire label, a reasonable consumer would interpret "FIT" to mean getting into a suitable state to build muscle.

[16] Courts applying New York, California, and Illinois law have found, as a matter of law, that ambiguity in food labels could be resolved by looking at the readily accessible ingredient panels on the products.  See e.g., Julian Foster v. Whole Foods Market Group, Inc., No. 22 Civ. 1240 (ERK) (RML), 2023 WL 1766167, at *4 (E.D.N.Y. Feb. 3, 2023) ("[T]he context provided on the Product's back label stating the exact amount of Omega-3s is sufficient to clarify any arguable ambiguity contained on the front label."); Bynum v. Fam. Dollar Stores, Inc., 592 F. Supp. 3d 304, 311 (S.D.N.Y. 2022) (finding "Smoked" was ambiguous and "a reasonable consumer would read the ingredients list in order to clarify his or her understanding of the label"); Boswell, 570 F. Supp. 3d at 96 (finding "All Butter" was ambiguous but that the ingredient list would disclose non-butter ingredients); In re 100% Grated Parmesan Cheese Litig., 275 F. Supp. 3d at 923 (finding "100% Grated Parmesan Cheese" was ambiguous but was resolved by the ingredient panel that disclosed the presence of non-cheese ingredients); Workman

Refrigerated Distribution Co., No. 18 Civ. 2250 (NGG) (RML), 2019 WL 3409883, at *3 (E.D.N.Y. July 26, 2019) ("[If the] misleading element is ambiguous . . . . clarification can defeat the claim."); In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig., 275 F. Supp. 3d at 922 ("[C]ontext can cure the ambiguity").  Indeed, reasonable "consumers are trained to look for" clarification on a product's unambiguous "ingredients panel," Melendez, 2020 WL 1283793, at *6 (cleaned up), and "would not be 'lulled into a false sense of security' by the bold lettering on the product's package." Boswell, 570 F. Supp. 3d at 96 (quoting 100% Grated Parmesan Cheese Litig., 275 F. Supp. 3d at 922); see also Brown v. Kellogg Sales Co., No. 10 Civ. 7283 (ALC), 2022 WL 992627, at *6 (S.D.N.Y. Mar. 31, 2022) ("[T]he reasonable consumer would overcome any confusion by referring to the unambiguous ingredient list on the packaging.")

   Accordingly, plaintiffs' state statutory claims are dismissed.[17]

---

v. Plum Inc., 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015) (finding "any potential ambiguity" created by pictured ingredients on food packaging "could be resolved by the back panel of the products, which listed all ingredients in order of predominance, as required by the FDA").

[17] This case is distinguishable from the case brought by plaintiffs' counsel concerning FIT SNACKS protein bars.  See Vitiosus, 2022 WL 2441303, at *14. There, Judge Anello acknowledged that "qualifiers in packaging, usually on the back of a label or in ingredient lists, can ameliorate any tendency of the label to mislead," but held that the packaging of the FIT SNACKS bars was unambiguous and misleading.  Id. at 14.  Indeed, the phrase "FIT SNACKS" clearly implies that the snack product is a "fit" or "healthy" "snack".  Here, only the term "FIT" is at issue, and, when considered in the context of the label, including the "soft cookie center" description and the packaging's images of cookies and other flavors, the term is not misleading.

**D. Common Law Claims**

Plaintiff's breach of express warranty and unjust enrichment claims are similarly "premised on the contention that Defendant's product is materially misleading." Bynum, 592 F. Supp. 3d at 313. "Because the Court has already determined that Plaintiff[s] ha[ve] failed to allege that the product's labeling would be likely to deceive or mislead a reasonable consumer, these causes of action are also dismissed for the reasons already stated." Id.; see also Julian Foster, 2023 WL 1766167, at *4 (dismissing breach of express warranty and unjust enrichment claims because the labelling is not misleading); Kennedy v. Mondelēz Global LLC, 2020 WL 4006197, at *15 (E.D.N.Y. July 10, 2020) (same); Fuchs, 2017 WL 4339821, at *6-7 (same); Galanis v. Starbucks Corp., No. 16 Civ. 4705, 2016 WL 6037962, at *4 (N.D. Ill. Oct. 14, 2016) (same); cf. In re ConAgra Foods, Inc., 90 F. Supp. 3d 919, 985, 1000 (C.D. Cal. 2015) (providing California breach of express warranty and Illinois unjust enrichment claims require deceptive conduct), aff'd sub nom. Briseno v. ConAgra Foods, Inc., 674 F. App'x 654 (9th Cir. 2017), and aff'd sub nom. Briseno v. ConAgra Foods, Inc., 844 F.3d 1121 (9th Cir. 2017); Tomasino v. Estee Lauder Cos. Inc., 44 F. Supp. 3d 251, 263 (E.D.N.Y. 2014) ("Because the plaintiff's breach of warranty claims are based on the same conclusory allegations as her §§ 349 and 350 claims, they do not provide a sufficient factual basis to establish a plausible breach.").

As an additional and independent reason for dismissal, "an unjust enrichment claim [also] cannot survive where it simply duplicates, or replaces, a conventional contract or tort claim." Reynolds v. Lifewatch, Inc., 136 F. Supp. 3d 503, 524 (S.D.N.Y. 2015) (quoting Koenig, 995 F. Supp. 2d at 290); accord Cleary v. Philip Morris Inc., 656 F.3d 511, 517 (7th Cir. 2011); Izquierdo, 2016 WL 6459832, at *10; Ebin v. Kangadis Food Inc., No. 13 Civ. 2311 (JSR), 2013 WL 6504547, at *7 (S.D.N.Y. Dec. 11, 2013). Here, plaintiffs' allegations are a mere regurgitation of those made with respect to plaintiffs' other claims, all of which have been dismissed. See Alce, 2018 WL 1737750, at *6 (citing cases).

Accordingly, plaintiffs' common law claims are dismissed.

**E. Remaining Claims**[18]

Having found that plaintiffs cannot state a claim for the FITCRUNCH products they did purchase, the Court finds that plaintiffs cannot then bring claims for FITBAR products, which they did not purchase. See Langan, 897 F.3d at 94 ("We have held that the claims of putative class members are too dissimilar to support standing against a particular defendant when that defendant did not actually injure a named plaintiff."). In any event, there is not sufficient identity between FITCRUNCH products

---

[18] Because the Court grants defendant's motion to dismiss in its entirety, the Court need not reach the remaining arguments for dismissal set forth in defendant's motion to dismiss.

and FITBAR products.  "Where products have 'different ingredients' and the producer 'made different advertising claims for each product,' the Second Circuit has dismissed claims by purchasers of products that do not raise 'nearly identical' concerns, because '[e]ntirely unique evidence will, therefore, be required to prove that the . . . products are false and misleading.'"  Housey v. Procter & Gamble Co., No. 21 Civ. 2286 (NRB), 2022 WL 874731, at *9 (S.D.N.Y. Mar. 24, 2022), aff'd sub nom. Housey v. Proctor & Gamble Co., No. 22-888, 2022 WL 17844403 (2d Cir. Dec. 22, 2022) (citing DiMuro v. Clinique Lab'ys, LLC, 572 F. App'x 27, 29 (2d Cir. 2014)).

Here, the packaging of FITCRUNCH products and FITBAR products is distinct.  The package of each FITCRUNCH product states that it is a "Whey Protein Baked Bar" and has a "baked soft cookie center;" provides the amount of calories, protein, and sugar in each bar; and states it is gluten free.  Mot. at 2; ECF No. 20-1.  In contrast, the package of each FITBAR product states that it is an "energy bar;" is non-GMO, vegan, dairy free, soy free, and gluten-free; has 12 grams of protein; and to "see nutrition facts for total fat content."  See Mot. at 3; ECF No. 20-3.  In addition, the products come in different flavors and have different ingredients.  See Compl ¶¶ 1, 40-52, Mot. at 2-3, 15.  For example, while FITCRUNCH products include whey protein blend and soy protein as their primary ingredients, FITBAR products lack those

ingredients and instead include organic brown rice syrup and hemp protein as primary ingredients.  See Mot. at 15.

Accordingly, plaintiffs may not assert claims concerning FITBAR products.

**F. Leave to Amend**

In the last sentence of their opposition to defendant's motion to dismiss, plaintiffs ask the Court to grant them leave to amend their complaint without any justification or a proposed amended pleading.  See Opp. at 25.  The Second Circuit has consistently stated that such requests may be denied.  See, e.g., Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 190 (2d Cir. 2015); Food Holdings Ltd. v. Bank of Am. Corp., 423 Fed. App'x 73, 76 (2d Cir. 2011) (summary order); Credit Chequers Info. Servs., Inc. v. CBA, Inc., 205 F.3d 1322 (2d Cir. 2000) (summary order); cf. In re Lehman Bros. Mortg.-Backed Sec. Litig., 650 F.3d 167, 188 (2d Cir. 2011).

Moreover, on February 15, 2022, after the parties exchanged pre-motion letters, the Court issued an order granting plaintiffs leave to amend their complaint to cure any deficiencies that defendant had identified in their pre-motion letter.  See ECF No. 16.  Notwithstanding the benefit of defendant's letter, plaintiffs did not amend their complaint.  "While pleading is not a game of skill in which one misstep may be decisive to the outcome, neither is it an interactive game in which plaintiffs file a

complaint, and then bat it back and forth with the Court over a rhetorical net until a viable claim emerges." In re Refco Capital Mkts., Ltd. Brokerage Cust. Sec. Litig., No. 07 Civ. 8686 (GEL), 2008 WL 4962985, at *2 (S.D.N.Y. Nov. 20, 2008) (quotation marks and citations omitted); see also Housey v. Proctor & Gamble Co., No. 22-888, 2022 WL 17844403, at *2 (2d Cir. Dec. 22, 2022) (summary order) ("[W]e conclude that the district court acted within its discretion in denying Housey's request for leave to amend her already once-amended complaint."). Accordingly, plaintiffs' request for leave to amend is denied.

## CONCLUSION

In sum, the Court holds that plaintiffs lack standing to bring claims for injunctive relief, and that plaintiffs' claims based on the argument that defendant's use of the term "FIT" is an "implied nutrient content claim" under 21 U.S.C. § 343(r)(1) is expressly pre-empted under the NLEA, 21 U.S.C. § 343-1(a)(5). To the extent plaintiffs also allege claims for monetary relief on the basis that defendant's use of the term "FIT" on their "labeling is false or misleading" under 21 U.S.C. § 343(a)(1), those claims are dismissed as the Court concludes, as a matter of law, that a reasonable consumer would not have been misled by defendant's labelling. Because plaintiffs have failed to state a claim related to the FITCRUNCH products they did purchase, they cannot bring claims for FITBAR products, which they did not purchase.

Accordingly, defendant's motion to dismiss is granted in its entirety, and plaintiffs' request for leave to amend is denied. The clerk is respectfully instructed to terminate the motion pending at ECF No. 19, enter judgment for defendant, and close the case.

**SO ORDERED.**

Dated:    New York, New York
          March 3, 2023

                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE